HALL-BORCHERT DRESS FORM CO. et al. v. ELLANAM ADJUSTABLE
FORM CO. et al.

(Circuit Court of Appeals, Second Circuit. March 10, 1914. On Petition for
Rehearing, April 7, 1914.)

No. 207.

1. PATENTS (§ 167*)—SCOPE..

A patentee obtains a monopoly only of what he discloses and claims;
the invention being determined by the specification, reference to the prior
art being useful only to clear up obscurities, and not to enlarge the claims
beyond their legitimate scope.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. §
167.*]

2. PATENTS (§ 328*)—INFRINGEMENT—DRESS FORMS.

The Ufford dress form patent, No. 908,910, describing a device calling
for a shoulder section which is always maintained in its proper position
to the neck section and movable "in and out only," *held* not infringed by
a device permitting a movement of the shoulder section both horizontally
and vertically.

Appeal from the District Court of the United States for the East-
ern District of New York.

This cause comes here upon appeal from a decree of the District
Court, Eastern District of New York, holding a patent to be valid and
infringed. The patent is No. 908,910, granted January 5, 1909, to
Charles A. Ufford for a dress form, which is a device for aiding
women in making and fitting gowns, cloaks, waists, etc. It is a manni-
kin, usually made of papier maché covered with cloth, and represent-
ing a woman's body. It is composed of a number of parts the rel-
ative positions of which may be changed so as to represent bodies of
different size and contour lines. The claims involved read as follows:

"3. A dress form divided horizontally below the shoulders and divided ver-
tically to constitute front and rear shoulder sections on each side and front
and rear neck sections, combined with means to pivotally connect the lower
inner corner of each shoulder section to the adjacent neck section, and means
to adjustably connect the upper inner corner of each shoulder section to the
adjacent neck section.

"4. A dress form divided horizontally below the shoulders and vertically in
a plurality of planes to constitute front and rear shoulder sections on each
side and a front and rear neck section, means connecting the upper portion of
each shoulder section with the neck section to permit said portion of the shoul-
der section to move in and out only, and means constituting a pivotal connec-
tion between the lower edge of each shoulder section and the neck section."

Maurice Block, of New York City (F. W. Wright and Walter C.
Noyes, both of New York City, of counsel), for appellants.

McLaughlin, Russell, Coe & Sprague, of New York City (Nathan
Heard, of Boston, Mass., and Rufus W. Sprague, Jr., of New York
City, of counsel), for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above).    [1]
A patentee obtains a monopoly only of what he discloses and claims.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Reference to prior art is useful to clear up obscurities, but it is in the specification (with such light as the drawings may throw upon it) that we are to find what the alleged invention is. When its language is plain and positive, its disclosure specifically set forth in unmistakeable terms, it is not to be modified by later theories of experts so as to enlarge the claims beyond their legitimate scope. Especially true is this when the art is a crowded one, and certainly this art was crowded when the patentee filed his application.

[2] .Turning now to the specifications: It is indicated that dress forms had already been made in sections, adjustably secured to each other so as to increase or decrease the size of the whole form or parts thereof. The patentee states that his objects are to provide novel and simple methods of adjusting portions of the form without changing or adjusting other portions. The present controversy is concerned with the adjustment of neck and shoulder pieces. That part of his device is very clearly described in the paragraph quoted below which read in connection with Fig. 2 of the drawings, indicates precisely what his construction is and how it operates. In the drawing 5 is the neck section, 3 and 4 are the shoulder sections. Figure 2 shows the inside of the back, half of the form. The inside of the front half of the form, with similar adjustable connections between the sections is shown in Figure 1 which need not be reproduced.

The specifications state:

Fig. 2.

"For adjustably connecting the shoulder sections to the neck section I have provided a construction which not only holds the shoulder sections properly spaced from the neck sections, but also. serves to guide said shoulder sections as they are adjusted toward and from the neck sections. The device herein shown for accomplishing this comprises a slotted member 10 secured to the shoulder section and overlying a second slotted member 11 secured to the neck section. These slotted members are clamped together by means of clamping bolts 90, and the slotted members 10 have studs 91 rigid therewith which play in the slots of the member 11. By this construction, the shoulder section is always maintained in its proper position relative to the neck section and may also be clamped to hold it properly spaced from the neck section. 92 are other slotted members which are secured to the neck sections both front and rear at the lower edge thereof, and which are adjustably secured to the lower corners of the shoulder sections by clamping bolts 93."

Except in abnormal cases the line of the human figure, especially the female figure, from the base of the neck to the tip of the shoulder (the so-called shoulder line) makes an angle more or less wide with the horizontal. It is apparent that if a shoulder section were moved away from the neck section horizontally the shoulder line would be

distorted, there would be a step up between the outer tip of the neck section and the inner tip of the shoulder section, which would be most undesirable. The patentee's device avoids this—as he says, "the shoulder section is always maintained in its proper position to the neck section." His adjustable connection is not horizontal, but parallel to the drawing. He does not state that it is thus parallel, but it would not operate as his device does operate unless it were thus parallel, and the drawing shows it parallel. This device comprises: First, a slotted member 11 secured to the neck section by a fastening 11a. Second, a similar slotted member 10 secured to the shoulder section by a fastening 10a. The slots overlie each other; through them there passes a clamping bolt 90 (the clamp is not shown in the drawing): as the shoulder piece moves in or out the bolt plays forward or back through the slots. The slotted member 10 has a stud integral therewith which plays in the slot of member 11. It is manifest that with this means of adjustment the movement in and out of the shoulder section cannot be horizontal but must be on the line of the shoulder. However far off the shoulder section is moved, its shoulder line prolonged would exactly meet the shoulder line on the neck piece, and vice versa. In the device there are four points always in the same straight line and from that line it is impossible for the slots to depart without distortion or breaking of the device. Two of these points are the fastenings 10a, 11a; they are permanently fixed. Whether they are clamped so tight that the parts 10 and 11 cannot move radially, or whether they are so loosely clamped that these parts could move on them as axes is immaterial. If they were loosely clamped there might be such radial play of the slotted members—provided either the clamping bolt 90 or the stud 91 were removed. But the patentee includes them both as elements of his combination, and when both are in the slots radial play of the slotted members is impossible. The patentee very aptly expresses this in claim 4, which states that the means connecting the upper portion of each shoulder section to the neck section permits "said portion of the shoulder section to move in and out only." With this means of connection there can be no tilting of the shoulder, up or down; to the line of the shoulder as designed by the maker of the form it must always conform. If the form is to be used for making a waist for a woman whose shoulder line is less sloping, or more sloping, it would seem that this device would not permit an adjustment to conform thereto: it could provide for broader or narrower shoulders but not for a markedly different shoulder line.

Turning again to the drawing, we see that the connection between the lower part of the shoulder section and the neck section is not parallel to the shoulder line, but horizontal. If its adjusting devices were arranged in the same way as in the upper connection the top part of the shoulder section would be moving out on one right line and the bottom part on a different right line. Therefore the lower connection is arranged with a single slotted member 92, and with the clamping bolt 93 only, the stud being dispensed with; thus securing a pivotal connection.

There is much testimony as to the great commercial success of the "later Ufford dress form." If, however, the form which has thus

commended itself is the one of which samples were submitted on the argument as complainant's commercial dress form, increase of sales seems of little importance, because its upper connections between shoulder and neck pieces have been so modified as to admit of the very tilting of the shoulder which the device of the patent would effectually prevent. The shoulder piece has a greater range of movement than "in and out only." Complainant's expert admits that in these commercial forms there is, for upper connection, one slotted member instead of two so that pivotting is permitted at the top of the shoulder section instead of the device preventing it; he also admitted that in the complainant's forms which he had seen the shoulders could be raised slightly. How much this enlarged range of adjustment over that which the patent called for contributed to commercial success we do not know and the record does not disclose. Presumably the greater the adjustability of a dress form, the more acceptable it would be to the user.

However it is not necessary now to pass upon the question of the validity of the patent. Defendant's connecting device (a toggle joint both above and below) most certainly is not such an one as will restrict the movement of the shoulder section so as to permit its upper portion "to move in and out only." On the contrary, it can be also moved horizontally and up or down, as the user may wish. Ufford's patent covered a connection in which the shoulder line of the original form must always be maintained; no carelessness of adjustment could disturb it. In defendant's form whether it be maintained or not depends on the will of the user, who can not only broaden the shoulders on the given line but can also tilt them so as to secure a different line. About this there can be no dispute, complainant's expert admits it and examination of Exhibit A Defendant's Form demonstrates it. If the connections which complainant uses in its commercial forms were patented, Exhibit A might infringe them, but we cannot see how it infringes a patent the very object and purpose of which is absolutely to insure movement in one direction only.

The decree is reversed, with costs.

## On Petition for Rehearing.

LACOMBE, Circuit Judge. This petition calls attention to the following clause of the opinion, in which after describing the upper adjustable connection between shoulder and neck pieces, with its slotted members *10* and *11*, their fastenings (not lettered in the drawings, but plainly shown therein and expressly enumerated in the specifications; for convenience we designated them *10a* and *11a*), the clamping bolt *90* and the stud *91*, we said:

"In the device there are four points always in the same straight line and from that line it is impossible for the slots to depart without distortion or breaking of the device. Two of these points are the fastenings *10a* and *11a*; they are permanently fixed. Whether they are clamped so tight that the parts *10* and *11* cannot move radially, or whether they are so loosely clamped that these parts could move on them as axes is immaterial. If they were loosely clamped there might be such radial play of the slotted members, provided either the clamping bolt *90* or the stud *91* were removed. But the pat-

entee includes them both as elements of his combination, and when both are in the slots radial play of the slotted members is impossible."

The petitioner suggests that this last statement is incorrect; that there *can* be radial play of the slotted members, when *10a* and *11a* are loosely clamped, even if *90* and *91* are both in the slots. The criticism is sound, if *10a* and *11a* are both loosely clamped there can be such motion; indeed, as is shown in an ingenious little model attached to the petition, there may be the greatest latitude of motion, the shoulder piece can be moved in and out and up or down, or in any combination of these directions, perpendicularly or horizontally or diagonally.

But this circumstance is not persuasive to the granting of a reargument. The opinion was not based on the proposition that the patentee had expressly stated anywhere that the fastenings *10a, 11a* were to be clamped tight. All that he says about them is that the slotted member *10* is "secured" to the shoulder section and the slotted member *11* is "secured" to the next section. The patentee so clearly, so positively, and so frequently points out that the function of his device is to secure movement "in and out only," movement "not in horizontal lines," movement which will always maintain the shoulder section "in its proper position relative to the neck section," that any method of securing the slotted members to their respective sections which will allow the latitude of motion in any direction which the model admits of cannot be the sort of securing which the patentee had in mind. The petition shows that this restriction of movement to a line of direction which will always preserve the shoulder line cannot be obtained if *10a* and *11a* are so loosely clamped as to allow radial movement of the slotted members. Therefore the slotted members must be "secured" to their respective sections, so that the function of the device will be preserved. Since that can be accomplished only by clamping the fastenings *10a* and *11a* tightly, they must be tightly clamped, although the patentee did not expressly say so (unless the word "secured" may be construed to imply it); his statement of function sufficiently indicates that they must be tight otherwise the slotted members would have a radial movement and the line of the shoulder might be distorted when the shoulder section was moved out to broaden the shoulders.

Petition for rehearing is denied.