### FARMERS' HANDY WAGON CO. v. BEAVER SILO & BOX MFG. CO.
(Circuit Court of Appeals, Seventh Circuit. April 18, 1916. Rehearing Denied July 13, 1916.)
No. 2256.

1. PATENTS ⬩66—PRIOR ART—PATENTS ISSUED PENDING APPLICATION.
   Where defendant in an infringement suit sets up as a defense that the patentee was not the first inventor of the thing patented, but that it was invented by another, who first applied for a patent, which was granted while the application for the patent in suit was pending, such prior

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied December 18, 1916.

patent must be considered in the prior art for whatever it discloses; but such disclosure is limited to the matters included in the several claims, unaided by the specification or by extrinsic evidence, except where necessary to elucidate and make the same clear.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ☞66.]

2. PATENTS ☞127—VALIDITY—PRESUMPTION FROM GRANT.

Where applications for different patents were pending at the same time, the fact that no interference was declared and that patents were issued on each argues strongly for the validity of each as against the others, and the presumption of patentable novelty arising from the grant is very strong.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 179, 180; Dec. Dig. ☞127.]

3. PATENTS ☞328—VALIDITY AND INFRINGEMENT—SILO.

The McClure patent, No. 814,067, for a silo, relating particularly to a rigid door-frame constructed of angle-irons connected by cross-bars, was not anticipated, and discloses patentable novelty; also *held* infringed.

4. TRADE-MARKS AND TRADE-NAMES ☞68—UNFAIR COMPETITION—COPYING ADVERTISING.

The practical adoption by an infringer of the advertising literature of the manufacturer of the patented article, even including its trade-name, *held* to constitute unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ☞68.]

5. COURTS ☞263—JURISDICTION OF FEDERAL COURTS—SUIT FOR UNFAIR COMPETITION.

In a bill for infringement of a patent, a claim for unfair competition in connection with the sale of the infringing article may properly be joined, regardless of the question of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. ☞263.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Suit in equity by the Farmers' Handy Wagon Company against the Beaver Silo & Box Manufacturing Company. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 219 Fed. 234.

Appellant filed its bill to restrain infringement of the three claims of patent No. 814,067, granted to C. W. McClure on March 6, 1906, for a silo, and also certain acts charged to constitute unfair competition and for an accounting. The invention relates more particularly to an independent rigid door-frame for the verticle opening of a silo. "The objects of my invention," says the patentee, "are to produce for silo-doors a frame that can be quickly and readily assembled without the aid of skilled labor, that will serve as a gage or guide for setting up the silo, and will form a secure support for the silo-doors and provide a support for the silo-hoops."

The claims read as follows, viz.:

"1. A frame for silo-openings, comprising in combination a pair of upright bars of L section, each bar being arranged with one of its members flush with the face of the adjacent silo-staves; a plurality of transverse bars spanning the silo-opening and rigidly secured to said upright bars, the ends of said transverse bars projecting beyond said upright bars; together with hoops encircling the silo and overlying the ends of said bars to hold them in contact with the silo-staves, substantially as described.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"2. The combination with the staves of a silo, of a metallic door-frame therefor relative to which frame the staves are erected, said frame comprising a pair of continuous angle-irons, one flange of each of which abuts the end staves of the silo, the remaining flange of which projects over the opening in the silo, to form seats or guides for the doors, and braces extending between the angle-irons and superposed upon the outer faces thereof, the ends of the braces overlying the end staves of the silo and separate means for securing the braces to the outer faces of the angle-irons and to the end staves.

"3. In a silo provided with a continuous opening, the combination of a door-frame comprising a pair of vertical angle-irons lining the walls of the opening from end to end, one flange of each of the angle-irons abutting the wall and the remaining flange overlapping the opening to form seats for the doors, braces connecting the angle-irons, the braces applied to the outer faces of the angle-irons and overlapping that portion of the silo adjacent the frame, and separate means for securing the braces to the angle-irons and to the silo respectively."

The drawings are as follows, viz.:

*Fig. 1.*

"The door-frame," says the specification, "consists in a pair of vertical members A A, each preferably made of a single piece of angle-iron or a metal bar of equivalent shape. It is preferably fastened, as shown in the drawings, to the edge of the stave at the side of the silo-opening. In the form illustrated in the drawings, where the side members are formed of angle-iron, the outer face of one leg of the angle rests against the edge of the stave C, and the other leg, which is practically flush with the outer surface of the stave C, projects over the opening to form a guide along which the door E may be slid vertically. Pressure against the door produced by expansion of the ensilage within presses the door out against the angle, and the greater the pressure from within the tighter the opening is closed.

"The side bars A A are bound together at any suitable intervals throughout their length by transverse strips or bars B B. The ends B' of the bars B B are secured to the outer face of the silo-stave C by bolts B", rivets, or other suitable means. The bars B where they cross the opening of the silo are preferably curved to the contour of the silo, but may be straight, if desired.

"Around the silo and lengthwise bar B extends a hoop or band D. The ends of the cross-bars B form a support for the hoop D, which spans the opening E. The hoop firmly holds the ends B' of the bars B against the staves C, thus relieving the bolts B" of strain due to expansion of the material in the silo.

"The combination of the two vertical side bars A A and the cross-bars B B, which are riveted to them, forms a rigid frame for the silo-opening. These parts are usually shipped assembled, it being only necessary when constructing a silo to set up the iron frame for the opening, erect the staves, and bind the silo in the usual manner by the hoops D D.

*Fig. 2.*

*Fig. 3.*

"A silo-frame made as above described will not contract as the silo shrinks, and the clearance between the side bars A A will not decrease and bind the doors E, being prevented from so doing by the cross-bars B. The ensilage is prevented from coming in contact with the bars A A, being covered from within by the doors E. The frame of this construction is rigid and one side of the frame cannot drop down and throw the frame out of shape. Each of the side members A has a large bearing-surface against the edge of the stave C, and by reason of this large bearing-surface the bolts B'' are relieved of the transverse strain which would, if it were not for the large bearing-surface, be brought upon them by reason of the crushing effect of the staves when they become soaked with moisture."

"A silo," says appellant's expert Carter, "in order to properly preserve its contents, must not only be water-tight, but practically air-tight. * * * On the other hand, the swelling of the wood, which results from its being wetted by the moisture which exudes from the green fodder, * * * is liable to develop enormous circumferential pressures, tending to strain and warp the sills or margins of the door opening and to force these parts inwardly towards each other. * * * Nor is this pressure constant, ordinarily, throughout the full height of the door opening. For most of the time the tank is but partially filled with the wet fodder, so that the portion of the staves above the level of the mass will tend to dry out," so that the door must be so constructed as to resist strain upon its shape under the uneven pressure. The silo must also be strong enough to resist wind pressure. The silo door-frame of the patent is assembled generally at the factory in conjunction with the end staves C C and shipped out to customers to form a strong and rigid nucleus around which the full silo is constructed.

The bill also contains charges of unfair competition on the part of appellee. Its advertising matter appropriates liberally the advertising matter of appellant, which action, appellant charges, has greatly affected its trade and produced heavy loss to it. Appellee sets up in its answer invalidity of McClure's patent, noninfringement, denies unfair competition, and introduces a number of prior patents, among which the following serve to disclose matter claimed as anticipatory, viz.: C. N. Crosby patent, No. 792,969, granted June 20, 1905, for a silo, on application filed April 13, 1904; W. L. Haag patent, No. 802,391, granted October 24, 1904, for a silo, on application filed February 8, 1904. Numerous instances of prior knowledge are also alleged and set out. The answer also charges that the patentee McClure was not the original or first inventor of any material or substantial part of said invention, that one C. N. Crosby previously knew of said invention and every material part thereof and filed his application for a patent thereon on April 13, 1904, that one Haag on February 8, 1904, did likewise, and that thereafter patents were issued to them respectively. The answer also sets out that others knew of said alleged invention prior to the time when appellant claims to have discovered it.

The District Court dismissed the bill for want of equity, from which order this appeal is taken. Other facts appear in the opinion.

Wallace R. Lane, of Chicago, Ill., for appellant.
John E. Stryker, of St. Paul, Minn., for appellee.
Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The only serious question presented is that of the validity of the patent. If valid, appellee's device clearly infringes. It was so found by the District Court. The use of the Z-bar or the T-bar instead of the L-bar, and the location of the sealing pressure between the margins of the door and the inner faces of the marginal staves, do not serve to materially differentiate the two. The patent in suit, in the absence of prior patents or uses anticipating the same, is of a character to meet

the requirement of the statute as to invention.   It is in an art which appeals most strongly to farming communities, where such assistance as it provides is in demand.   The difficulty in procuring skilled labor and proper construction help makes the factory nucleus of a silo—one that will serve as a guide in building the necessary structure for a silo—a very serviceable device.   This is clearly evidenced by the fact that great numbers of them have been and still are being sold.   The demand for a strong and inexpensive structure has been and doubtless will continue to be very great.   The device of the patent has gained great favor.   The difficulty had been in constructing a rigid and true doorway for the vertical opening—one that would offset the weakening effect of such an opening.   It will be borne in mind that a silo should be, as near as possible, both air and water-tight.   Appellant uses in its door-frames a pair of angle-irons—one on either side of the opening.   These are so arranged as to fit closely into the silo walls and at the same time afford a close, practically immovable, seat for the ends of the door sections, without so closely binding the latter as to make them difficult to remove.   These bars are joined by cross-bars which are riveted thereto near their ends, which ends are prolonged so as to be fastened to the first stave, thus binding the two together on either side and also uniting the right and left adjacent staves.   The other staves are readily put in place, and the whole bound with hoops.

While the patent claims a silo, the special feature seems to be the rigid factory-made and portable door-frame.   The metal has the advantage over a wood frame in being rigid and not affected by the moisture of the contents of the silo or from the outside.   "The angle bars," says appellant's counsel, "prevent this [distortion and binding] by furnishing a continuous reinforcement, in contact with the end staves from top to bottom and are capable, in connection with the cross braces $B$, of receiving and resisting the crushing effect of the staves, which is thus distributed along the length of the angle bars."   The extension and fastening of the ends of the cross-bars to the end staves, it is claimed, afford a cantilever effect which relieves the angle-bar rivets.   This feature of the construction is attested by appellant's salesmen to be a decided improvement upon the art as it theretofore existed.

The Crosby and Haag patents were co-pending with McClure in the Patent Office.   On both of them patents were issued prior to McClure upon applications also filed prior to that of McClure.   The appellant contends that these two patents were not in the prior art with regard to the McClure patent, because the several patents granted thereon were subsequent to the date of filing his (McClure's) application.

[1]   Among the defenses filed were Nos. 3 and 4, set out in section 4920 of the Revised Statutes (Comp. St. 1913, § 9466).   They read as follows, viz.:

"3. That it [the patent] has been patented or disclosed in some printed publication prior to his [the patentee's] supposed invention or discovery thereof, or more than two years prior to his application for a patent therefor.
"4. That he [the patentee] was not the original and first inventor or discoverer of any material and substantial part of the thing patented—citing Crosby and Haag, with others, as having previously known of said inven-

tion and every material part thereof, and also as having filed applications and received patents thereon."

While under defense 3 aforesaid, in order to be considered in the prior art, the patent cited should have been granted prior to the filing of the application of McClure, yet where the fourth defense is set up, the question as to who was the first inventor is squarely raised, and that matter must be determined on its merits. Barnes Sprinkler Co. v. Walworth Mfg. Co., 60 Fed. 605, 9 C. C. A. 154; Sundh Electric Co. v. Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280. While McClure might have carried his date of invention back to the Crosby and Haag application filing dates, if such were possible, he did not do so. Therefore, Crosby and Haag, having filed their applications prior to McClure's date, must be deemed to have made their several inventions prior to the time when McClure made his. They are thus in the prior art as to McClure for whatever they disclose. This should, we hold, be limited to such matters as are included in their several claims, unaided by their specifications or by extrinsic evidence except where necessary to elucidate and make the same clear.

The first claim of Haag reads as follows, viz.:

"A silo composed of a series of like staves and having an unobstructed door-opening at one side, the side posts of which are the adjacent staves, a plurality of straight braces extending across the door-opening and having their ends curved to conform to the curvature of the body and bolted thereto, angular lugs secured to the inner faces of said braces and engaging the edges of the staves adjacent the door-opening, hoops having portions extending across the braces and lying thereon, a plurality of door-sections of a width greater than the width of the door-opening and having chamfered end portions adapted to lie directly against the inner faces of the staves adjacent the door-opening, hooks secured to each of said door-sections and adapted to overlie the brace adjacent thereto, and means for clamping the door-sections in the door-opening."

This substantially describes the invention. The device has no side frame L or other iron section bars. Its metal cross-bars or braces are secured to the staves adjacent to the opening respectively by bolts. Practically all of its bolts or securing devices are anchored in wood and therefore subject to be loosened. The device has no metal seat for its doors. The idea of a rigid door-frame construction is not the object or central idea in the silo construction, and its door-frame is not independent. It does not, in our judgment, anticipate McClure. That its advent brought no contribution in practical advance to the art may be presumed from the fact that it has always remained negligible in the commerce of the art.

The District Court held the patent in suit invalid, as being anticipated by the Crosby patent. This device employs for the sides of its door-frames continuous sections of metal, Z-shaped in cross sections. One flange of this Z section is fastened or secured to the adjacent stave by a series of bolts passing through the flange and stave. The opposite flange forms the side portion of the door-frame. The rib or web connecting the two, spans the smooth, beveled edge of the adjacent stave. The Z sections are connected by steel cross-pieces which do not engage the adjacent staves. By the adjustment of the metal parts a

seat is provided for the board sections which compose the door itself, as in McClure. The L and Z shaped metal sections may be deemed equivalents for the present purposes. Crosby claims stability, durability, simplicity, and air and water tightness, together with facility in discharging the contents and resistance to great pressure. The use of metal hoops for holding the staves together is a necessity with Crosby as in all silo tanks, and especially in the case of circular silos.

Claim 2 of Crosby reads as follows:

"A silo having a door-section comprising two metal standards having oppositely-extending flanges and an intermediate rib, metal cross-pieces comprising cross-flanges secured to the oppositely-extending flanges and having central flanges rabbeted at their ends to fit over said oppositely-extending flanges and against the intermediate ribs thereof at intervals to form door-casings, and doors formed of staves connected by a bar and bound with felt, said doors being fitted behind the front flanges of the standards and having buttons pivoted thereto and provided with end portions arranged to swing to positions in front of the cross pieces."

[2] This claim fairly expresses what the patent covers. As above noted, McClure, Haag, and Crosby were pending in the Patent Office at the same time. The fact that no interference was declared, and that each of them was granted a patent for what he claimed, argues strongly for the validity of each as against the others. The presumption of patentable novelty arising from the grant becomes in such case very strong. American Caramel Co. v. Glen Rock Stamping Co. (D. C.) 201 Fed. 363. Neither Haag nor Crosby were called as witnesses. That fact also contributes to the force of the presumption that the results produced by McClure's construction were new, or that they were obtained in a novel or improved manner. While both Haag's and Crosby's inventions are prior to McClure's, it is evident that, to overcome the presumptions above set out, the court must be able to find very clearly from the evidence that the subject-matter of Crosby is practically identical with that of McClure's claims.

[3] Crosby's cross-pieces serve only to unite the side door-frames or Z-bars. They fail to strengthen the union between the first or adjacent stave and the Z standards. All that holds the standard and stave together is the series of bolts which connect the stave with the outward flange of the Z-bar. These bolts of necessity have only a slight hold in the stave, not being supported by more than an inch or so of wood, which they serve to weaken, and which must, as a rule, be unable to resist the great strain caused by heavy winds and swelling staves, whereas McClure has provided, as aforesaid, for the extension of the cross-bar ends to embrace and form strong and rigid connection with the first or adjacent stave, thus more than doubling the strength effected by Crosby's union between the standard and the stave. This cross-section is, of course, in addition to the hoops which encircle the silo. Where independence, rigidity, and strength are essential, everything which contributes to those ends is most desirable. In the patent in suit, the angle-iron side-frame sections are covered by the wooden staves adjacent to them and therefore protected from the action of the acid of the silo, which, it is claimed, is destructive. On the other

hand, one flange at least of appellee's Z-bar is wholly exposed thereto, thereby subjecting the other two flanges also to the destructive process. In the desirable features of silo construction, such as strength, rigidity, and simplicity, the device of the patent had so far appealed to the trade that it had not only supplanted the alleged anticipating silos, but had for a number of years held the market to an unusual degree, sounding defiance to all comers. Appellee, having overlooked the silos of the prior art and openly appropriated that of the patent, must, by reason of its tribute implied in its almost literal annexation of the device, come somewhat limpingly to the contest against its validity. It certainly concedes its utility. All the said facts of the case considered, together with the further fact that appellee at once ceased infringing when notified of suit, we are satisfied that nothing in the prior art as shown, or prior knowledge, would justify us in holding that the patent in suit is void for want of patentable novelty. Nor is there proper ground for holding that it discloses an aggregation. All the elements combine to constitute a valid combination, well within the statute.

[4] With regard to the charge of unfair competition, the record is replete with the most bold and open appropriation of appellant's trade literature by appellee. Whole clauses are taken, practically adopting appellant's literature in its statements, prospectuses, and catalogues. It is in evidence that appellee's device and advertising seriously undermined appellant's trade, which, when appellee's infringement, on notice of suit, was discontinued, at once revived. Appellee even applied to its product the trade-name "All steel door-frame," which was used by appellant, utterly ignoring appellant's rights.

[5] The bill seeks to restrain infringement of the patent and also to restrain unfair competition. These are properly joined, independent of the question of citizenship. Adam v. Folger, 120 Fed. 260, 56 C. C. A. 540; Ludwigs Mfg. Co. v. Payson Mfg. Co., 206 Fed. 64, 124 C. C. A. 194.

Appellant is entitled to have its patent sustained, infringement thereof and unfair competition found and restrained, and an accounting taken.

The decree of the District Court is reversed, with direction to grant the relief prayed for.