DE LASKI & THROPP CIRCULAR WOVEN TIRE CO. et al. v. UNITED STATES TIRE CO.

(Circuit Court of Appeals, Second Circuit. May 24, 1916.)

No. 273.

1. PATENTS ☞328—ANTICIPATION—APPARATUS FOR MAKING WHEEL TIRES.
   The Thropp patent, No. 822,561, for an apparatus for manufacturing wheel tires, *held* void for anticipation by prior use.

2. APPEAL AND ERROR ☞990—REVIEW—QUESTIONS OF FACT.
   While an appeal in equity brings up all the facts for review, there must come a time when the suitors' right to new investigations of com-

plicated occurrences is properly limited to the indication of palpable error, and does not extend to discussion of matters about which all experience shows careful men may justly differ, and when issues of fact, repeatedly determined the same way, must be regarded as having passed into the realm of settled things.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3898; Dec. Dig. ☞990.]

3. PATENTS ☞73—"DATE OF INVENTION."

The "date of invention" of a patented device is the date when the invention in its entirety, as patented, was conceived.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 64; Dec. Dig. ☞73.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the De Laski & Thropp Circular Woven Tire Company and the John E. Thropp's Sons Company against the United States Tire Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 232 Fed. 884.

The decree of the District Court dismissed the bill on claims 1 and 2 of patent No. 822,561, to Peter D. Thropp for an "apparatus for manufacturing wheel tires."

Walter C. Noyes and E. Clarkson Seward, both of New York City, for appellants.

Livingston Gifford and Ernest Hopkinson, both of New York City, for appellee.

Before COXE, Circuit Judge, and HOUGH and MAYER, District Judges.

HOUGH, District Judge. [1] Plaintiffs have heretofore unsuccessfully litigated the claims in suit in the First Circuit. De Laski, etc., Co. v. Fisk, etc., Co. (D. C.) 198 Fed. 125, affirmed 203 Fed. 986, 122 C. C. A. 286. Defeat in that jurisdiction resulted from a finding of anticipation, made by the trial court and affirmed on appeal. It is now sought to (1) carry back Thropp's date of invention to a time earlier than the use hitherto successfully urged, (2) so interpret the claims as to make them fit what Thropp accomplished when he anticipated the anticipation, and (3) destructively criticize the evidence (repeated herein) upon which the First Circuit decisions rest.

The contentious history of this patent is not all contained in reported decisions. There was a lengthy interference in the Patent Office, and Thropp there swore (the point being already vital) that his inventive date was February 1, 1905. Decision in the Fisk Case found proof beyond reasonable doubt of a commercial use in January, 1905. The contention here, and in the court below, is that in January, 1904, Thropp made and used an apparatus upon which claims 1 and 2 will read, so that as to those claims at all events the anticipation is overthrown. With great assistance from Judge Hand's careful summary of evidence, we have gone over the testimony relating to the (so-called)

"Goodrich" use of January, 1905. In our opinion the comment of the trial judge on the anticipatory use most urged was fully justified, as we "can hardly imagine a more complete documentary demonstration of the making and delivery of four tires than this evidence discloses, under the necessary limitations of factory conditions."

[2] As one instance of prior use, which fully meets the requirements of law, is of greater worth than any number of cases less well sustained, further examination is unnecessary. This, however, is a litigation- aptly suggesting the truth that, while an appeal in equity brings up all the facts for review, there must come a time when the suitors' right to new investigations of complicated occurrences is properly limited to the indication of palpable error, and does not extend to discussion of matters about which all experience shows careful men may justly differ. Three courts have now arrived at the same conclusion in respect of the "Goodrich use"; there is certainly evidence on which to base their findings; and, substantially the same evidential material having been used throughout, we regard the fact that the Goodrich Company did what has been so often found as having passed into the realm of settled things.

Giving the "Goodrich use" the scope and importance accorded to it in the First Circuit renders it necessary for plaintiff either to carry back his date of invention or assert that prior decisions have erroneously interpreted the patent and misunderstood the inventive concept. As above indicated, both efforts have been made. To carry the inventive date back of February 1, 1905, necessarily involves an admission of error (to say the least) on the part of Thropp when he took the interference oath. There is no legal bar to plaintiff's making the effort. It cannot be held that Thropp's oath constitutes an estoppel against what is now sought to be done; but inasmuch as the present effort mainly rests upon the testimony of the same witness, who once gave his date of invention as February 1, 1905, plaintiff cannot complain if evidence contradicting or varying that solemn statement is viewed with a critical eye, and strong corroboration demanded therefor.

In our opinion the patentee has never sworn that what he did in 1904 was the same thing that both he and Goodrich did in 1905. This is well shown by the form of question put to Thropp in the Fisk Case as compared with the corresponding question herein. When the patent was rested on February 1, 1905, as the inventive date, Thropp was asked "When did you conceive the *invention* set forth in" claims 1 and 2? And he gave in reply the date sworn to in interference. In this suit counsel inquired of Mr. Thropp, not when he conceived his invention, but "when [he] first conceived an open mold *having the elements* of claims 1 and 2," and he replied, "In January, 1904." Thus is it indicated that Thropp himself believed his invention to date from 1905 until he had been taught to confine that invention, not to what he thought it was when he first testified, but to what his counsel deemed it to be, after unsuccessfully encountering the "Goodrich use."

This reduces the case to one inquiry, What was Thropp's invention as disclosed by the specification? for it is from that (with such light as drawings may throw upon it) that we must ascertain in what the al-

leged invention consists. Hall-Borchert Dress, etc., Co. v. Ellanam, etc., Co., 213 Fed., at page 342, 130 C. C. A. 193. The patent states that it relates to apparatus for manufacturing wheel tires and more particularly "for holding a clencher tire in position during the vulcanizing process.'" The two claims in suit describe the invention as a "tire-forming apparatus" comprising certain parts.[1]

The device described in the specification consists substantially in a mold which presses into shape the clencher edges of a rubber motor tire, plus tape wrapping and filling pieces, surrounding both clencher mold and the portion of the tire projecting therefrom, all for the purpose of holding the whole tire "in position during the vulcanizing process." This support is necessary, and what Thropp avoids, and presumably improved upon (in and by this patent), is the use of closed molds through and by which heat was applied to the whole tire. His small mold forming the clencher edge, when wrapped in the tape which supported the rest of the tire, is subjected, not to a closed hot mold, but to live steam. The result of the operation is known as the "wrapped-tread" tire.

The patentee never conceived a wrapped-tread tire, or the apparatus for or method of producing one, until 1905, and he therefore never reached the inventive thought of his specification until that date; but it is now asserted (and will be here assumed for purposes of discussion) that in 1904 he made and attempted to use so much of his "tire-forming apparatus" as is necessary to mould the clencher edge or bead. It so happens that the two claims in suit will read upon the clencher bead-making mold, because from those two claims all reference to the rest of Thropp's "tire-forming apparatus" is omitted.

But in 1904 Thropp was not endeavoring to make a wrapped-tread tire, nor to do without the closed hot molds, to dispense with which is the very object of the apparatus covered by this patent; he used (at the most) the same kind of molds for forming his clencher beads in 1904 that in 1905 he utilized for his wrapped-tread tire; but he vulcanized by molds only, and not by open or hot steam heat. He admits that the effort was not a success, and it is obvious that this discarded experiment has found its only utility in this endeavor to reinterpret the patent after its first defeat.

The invention disclosed by the specification is for an apparatus suitable for vulcanizing, not half a tire, but a whole tire, not by two steps, but by one. The "Goodrich use" must be met by testimony at least as persuasive as that establishing it. It cannot be overthrown, either by an unsuccessful experiment, or by anything short of a "conception of invention consisting in the *complete performance* of the mental part of the inventive act." Robinson on Patents, § 376. An anticipation must always be as broad as the invention, and the best that can be said for the contention here made is, not that any such broad conception enter-

[1] Claim 1 is as follows:
"1. Tire-forming apparatus comprising an annular core or mandrel, annular pressure-rings arranged to engage the clencher edges of the tire leaving the outer body portion of the tire exposed and means for forcing the pressure-rings into a predetermined position with respect to the core or mandrel."

ed Thropp's mind in 1904, but that he reached a part of this ultimate inventive concept at the earlier date, and, when he had arrived at the whole of it, so drew two of his claims that they appear to describe, not his whole inventive idea, but only that portion of it formed in 1904.

[3] The difficulty with this ingenious argument is that in 1904 Thropp arrived at no inventive idea that had relation directly or indirectly to what he patented. Even accidental use of some features of an invention, without recognition of its benefits, is not anticipation. Atwood-Morrison Co. v. Sipp, etc., Co. (C. C.) 136 Fed. 862, and cases cited. This patentee has remembered that he early used (to vulcanize a clencher bead by a closed mold) metal shapes similar to those he afterwards used as part of a vulcanizing apparatus suited for open heat only; the use does not rise to the dignity of a device intended for a different purpose, but capable of supplying an inefficient substitute for the machine of a later patent, which we held no anticipation in United Shirt, etc., Co. v. Beattie, 149 Fed. 736, 79 C. C. A. 442.

The invention in this case is single; if the claim does not cover the whole of it, so much the worse for the claim. The conception of invention dates from January, 1905, and belongs to the Goodrich Company. *Invention* is an idea; the quest for its origin is a search for the whole idea, not half of it. Thropp got his whole in 1905, a month after his anticipator.

Decree affirmed, with costs.