## DAVIS–BOURNONVILLE CO. v. ALEXANDER MILBURN CO.*

(Circuit Court of Appeals, Second Circuit. May 26, 1924.)

No. 348.

1. **Patents ⚮324(5)—Scope of appeal from interlocutory decree in infringement suit.**

An appeal from an interlocutory decree in an infringement suit granting an injunction is taken under Judicial Code, § 129 (Comp. St. § 1121), and does not bring up for review refusal to permit withdrawal from stipulation as to title, not referred to in the decree, but only those matters covered by the special statute.

2. **Appeal and error ⚮949—Relieving party from stipulation discretionary.**

Granting or refusing leave to a party to retire from a stipulation is a matter of discretion, and is reviewable only for an abuse of discretion.

3. **Patents ⚮328—880,099, for welding torch, held void for anticipation.**

Patent No. 880,099, for a welding torch, claims 2 and 3, *held* void for anticipation.

4. **Patents ⚮328—874,666, for apparatus for cutting metals, held valid and infringed.**

Patent No. 874,666, for an oxy-acetylene torch for cutting metals, *held* valid, and claim 1 infringed.

5. **Patents ⚮328 — Whitford, 1,028,410, for torch for cutting metals, held valid and infringed.**

The Whitford patent, No. 1,028,410, for an oxy-acetylene torch for cutting metals, *held* valid, and claims 3, 6, and 7 infringed.

*Certiorari granted 45 S. Ct. 93, 69 L. Ed. —.

**6. Patents ⊕61 — Patent not invalidated by disclosure in earlier application, not claimed.**

Where each of two copending applications for patent, both ultimately granted, discloses certain substantially identical matter, which is not made the basis of claims in, nor covered by the claims of, the application first filed, but is the basis of, and is covered by, the claims of the later application, the patent of the earlier filing date cannot be used to invalidate the other patent.

**7. Patents ⊕61 — Abandoned or withdrawn application not part of prior art.**

An application for patent, either abandoned or withdrawn, has per se no influence at all in ascertaining the state of the prior art.

**8. Patents ⊕61 — Pending application not part of "prior art."**

No part of a pending application for a patent can be considered as a part of the "prior art," which means something that a man skilled therein may by diligence discover.

**9. Patents ⊕61 — Disclosure in specification not claimed is not evidence of an "invention."**

A disclosure in a specification, not made the basis of claims, does not constitute evidence of an invention in a patentable sense.

**10. Patents ⊕72 — Patent on earlier application is anticipatory only as to what it claims.**

On the question of anticipation or prior invention, a patent of earlier application is to be considered for whatever it discloses, which should be limited to such matters as are included in its several claims, unaided by its specification or by extrinsic evidence, except where necessary to elucidate and make the same clear.

**11. Patents ⊕51(1) — Disclosure in pending application is not anticipation.**

There can be no anticipation unless, constructively, at least, the public was timely in possession of that which the patentee sought to appropriate to himself, and this is not afforded by what is disclosed in a pending application in the Patent Office, which is not a disclosure to the public.

**12. Patents ⊕90(1) — Defense of priority of invention is sustained, to prevent double patenting.**

Priority of invention does not mean the same thing as anticipation, and the logical reason for sustaining priority of invention is to prevent double patenting.

**13. Patents ⊕90(1) — "First inventor" must be one who perfects his invention.**

A "first inventor," within the meaning of that phrase as used in the fourth paragraph of Rev. St. § 4920 (Comp. St. § 9466), providing that it shall be a defense to a suit for infringement that the patentee was not the original or first inventor, must be a person who perfects his invention, and the only evidence of such perfected invention ordinarily derivable from any patent is a union of disclosure and claim.

**14. Patents ⊕73 — Patent as evidence speaks from date of grant as to matters disclosed, but not claimed.**

Under the defense that the patentee was not the first inventor, a patent in evidence speaks only from the date of grant as to matters disclosed, but not claimed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Davis-Bournonville Company against the Alexander Milburn Company. From the decree, both parties appeal. Affirmed.

For opinion below, see 297 Fed. 846.

Plaintiff, as owner, sues on three patents: 874,666, dated December 24, 1907, and hereinafter called the "first cutting patent"; 1,028,410, dated June 4, 1912, and hereinafter called the "second cutting patent"; 880,099, dated February 25, 1908, and hereinafter called the "welding patent." All the patents relate to the art of heating and/or welding metals by means of a ·mixture of gases under ·pressure—a subject described very generally with particular reference to the cutting of metal in Linde, etc., Co. v. Morse, 246 Fed. 834, 837, 159 C. C. A. 136.

The first cutting patent is described as an "apparatus for perforating and cutting metals," and the first claim reads thus:

"In an apparatus for cutting metals by means of a heating jet, and an oxidizing jet, the mouthpiece having an oxidizing gas current outlet and several combustible gas outlet openings arranged and adapted to discharge combustible gas in streams substantially parallel to the stream of oxidizing gas, substantially as and for the purpose set forth."

The second cutting patent is described merely as a "blowpipe," and the third claim is as follows:

"Apparatus for cutting metals by means of gases, comprising a socketed head and a unitary removable and replaceable tip, said head having three separate conduits for gases to form a combustible mixture and oxygen for cutting, respectively, and said unitary tip being provided therein with a cutting jet passage having a delivery orifice at the forward part of the tip and communicating at the rear part of the tip with the corresponding conduit in the head and with a heating jet passage having a delivery orifice at the forward part of the tip and separate inlets in the rear part of the unitary tip communicating with the corresponding conduits in the head, the head and the tip being provided at the joint between the two with cooperating sealing seats which prevent leakage and all improper mingling of the gases."

The welding patent, though described ·as concerned with "heating and welding metals," is not for a process, but for a mechanical device, and the second claim is as follows:

"An apparatus for heating and welding

metals by means of gases having separate conduits for the two kinds of gases under different degrees of pressure, an interposed removable part constituting a nozzle having a mixing chamber and formed at one end with radial channels constituting ports for the passage of gas under low pressure to the mixing chamber and a longitudinal channel for the passage of gas under high pressure to the mixing chamber."

The court below held that claim 1 of the first cutting patent, and claims 3, 6, and 7 of the second cutting patent were valid and infringed, but declared claims 2 and 3 of the welding patent (the only ones sued on) invalid for anticipation. From interlocutory decree accordingly both parties appealed.

Pennie, Davis, Marvin & Edmonds, Dean S. Edmonds, J. F. Brandenburg, and E. H. Merchant, all of New York City, for plaintiff.

A. Parker Smith, of New York City, and James A. Watson, of Washington, D. C., for defendant.

Thomas Ewing, of New York City, amicus curiæ.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The case was tried below under a quite usual stipulation of parties with regard to plaintiff's title to the patents in suit. After decision rendered, but before decree entered, defendant, having discovered some asserted defect in plaintiff's title, moved to be relieved from its stipulation and in effect to retry the cause. This motion was denied, and defendant assigns for error the court's refusal to permit withdrawal from the stipulation and filing a supplemental answer.

[1] It is somewhat difficult to perceive defendant's right to urge this point. We hear this appeal solely by virtue of the statute. Judicial Code, § 129 (Comp. St. § 1121). Each party's right to appeal arises from the granting or refusing of an injunction. The decree appealed from makes no reference to the matter of this stipulation.

An appeal from a final decree brings up all interlocutory matters, but an appeal from an interlocutory decree brings up only those matters covered by the statute allowing an appeal unknown to the historic course of equity. The defendant's technical right to urge this point from such a decree,

and one that says nothing at all about this stipulation, is not perceived. Harding v. Corn Products, 168 Fed. 658, 94 C. C. A. 144.

[2] But the real point in controversy is plain enough from the papers submitted. Therefore, although we hold the point not technically presentable, we express opinion on the merits, as follows, viz.: Granting or refusing leave to retire from a stipulation is a matter of discretion, and no abuse of discretion is shown herein. On the contrary, a most equitable method of curing the difficulty was pointed out by the trial judge, and defendant refused to accept the suggestion. It insisted as a right upon that which was always a matter of grace. There is no substantial merit in this attempted appeal, entirely apart from its technical imperfection.

As to the welding and the first cutting patents it is unnecessary to expand the findings of fact made below by L. Hand, J.

[3] Clumsily, perhaps, and in a mechanical form that failed to win recognition, the Odam French patent (363,119 of 1906) presents every patentable attribute or element contained in the claims of the welding patent in suit. It may be and quite probably is true that Odam's tool could not be said to have tips removable and replaceable by the user—i. e., the mere workman—to meet changing conditions on the job, and to provide welding flames of different sizes; but the claims in suit are not drawn to cover merely a specially convenient tool, but to get as near as the law permits to covering a principle of operation, and everything essential to reducing that principle to practice Odam reveals. That his reduction was not the best one, nor a specially successful one, is immaterial in suit on such claims as the second and third of No. 880,099. We agree with the court below in its exposition of the anticipation found in Odam's published patent.

[4] As to the first cutting patent, there is nothing to add to the opinion below; no question of law is raised, and the decree as to No. 874,666 is correct.

[5] That the second cutting patent is infringed, if valid, and is valid, unless defeated by the plea that Whitford was not the "original and first inventor or discoverer of any material and substantial part of the thing patented," is also a point on which nothing need be added to Judge Hand's opinion. The substantial question on this appeal is raised by the following facts concerning Whitford, No. 1,028,410:

Whitford filed application March 4, 1911, and received patent June 4, 1912. One Clifford filed application January 31, 1911, and received patent February 6, 1912, for a "torch" (No. 1,016,613). Clifford sought and obtained protection for an invention quite distinct from that of Whitford, and his claims do not touch or affect those of Whitford; but in the disclosure of his specification he shows a structure which plaintiff admits "does comply with the requirements of the Whitford patent." The argument for defendant based on Clifford's patent is also rested on two other copending applications; but, as there is considerable doubt as to the similarity of subject-matter or the operative capacity of these other disclosures, we state the question as raised by Clifford alone.

[6] That question is this: Assume two copending applications for patent, both ultimately granted, each disclosing certain substantially identical matter, which matter is not made the basis of claims in, and is not covered by the claims of, the application first filed, but is the basis of, and is covered by, the claims of the later application; under such circumstances can the patent of the earlier filing date be used to invalidate the other patent?

The conditions on which a patent may be granted are set forth in R. S. § 4886 (Comp. St. § 9430), and the usual defenses to a patent once granted in R. S. § 4920 (Comp. St. § 9466). The enumeration of neither section is exclusive. The granting section recognizes that there must be "other due proceedings had"—not described even by reference; and the defense section does not forbid objection to legal or equitable relief, if such objection is inherent in the nature of patent rights, or grows out of the fact that they are property, like other incorporeal hereditaments. Of this the list of possible defenses set forth in Walker on Patents is sufficient proof. But no one can anticipate all possible defenses. The fifth edition of Mr. Walker's book declared in 1917 (section 106) that "no abandonment of an invention after the issue of letters patent has ever been judicially decided to exist in the United States," yet cotemporaneously Macbeth v. General, etc., Co., 246 Fed. 695, 158 C. C. A. 651, was under consideration, which does not in terms, but does in effect, hold that very thing.

If, therefore, without regard to any formal category of defenses, one considers the question whether the statements contained in a specification, but not deemed of sufficient importance by the applicant to form the basis for a claim, should be regarded in equity—i. e., justice—as preventing another person from making the same statement and grounding a claim upon it before the earlier statement has become public, the answer is to us plainly in the negative.

There seems no material difference between the attitude of one who files application for a patent and never presses it and one who does the same thing and never uses a portion of his disclosure. It was held in the Corn Planter Patent, 23 Wall. 181, 23 L. Ed. 161, that a mere application, subsequently abandoned or withdrawn, was no bar to a subsequent patent therefor to another. As Bradley, J., remarked (page 211 [23 L. Ed. 161]): "It can only have a bearing on the question of prior invention or discovery; * * * the mere fact of having unsuccessfully applied for a patent therefor cannot take the case out of the category of unsuccessful experiments."

We have been favored in this litigation by the brief as amicus of Mr. Ewing, formerly Commissioner of Patents, and are advised that for many years it has not been the Patent Office practice to search for references under abandoned applications. They are treated as having no bearing upon the patentability of matter subsequently presented by others. This settled practice of an "executive branch of the government" in harmony with Judge Bradley's remarks (Bate v. Sulzberger, 157 U. S. 1, at page 34, 15 Sup. Ct. 508, 39 L. Ed. 601), may well justify the holding, now made, that an application for a patent either abandoned or withdrawn has per se no influence at all in ascertaining the state of the prior art.

[7] But in the present instance Clifford pursued his application, and presumably obtained the claims he wanted, none of which rests upon the matter which this defendant wishes to use. When Clifford's patent was published, so much of his disclosures as was not covered by a claim was dedicated or surrendered to the public. Walker (5th Ed.) p. 222, citing Jewell Filter v. Jackson, 140 Fed. 340, 72 C. C. A. 304. And see Brammer Co. v. Witte, 159 Fed. 726, 728, 86 C. C. A. 201; McClain v. Ortmayer, 141 U. S. 419, 424, 12 Sup. Ct. 76, 35 L. Ed. 800; Ball, etc., Co. v. Sanford Co. (C. C. A. 2; Feb. 18, 1924) 297 Fed. 163. But such dedication or "disclaimer" (as it is called by Sanborn, J., in the case first cited) did not and could not take place until the public could become acquainted with what was given to them, and

that knowledge could only be gained by the publication of the patent.

[8] Thus the best reason, or a logical reason, for holding, as we do, that no part of a pending application for a patent can be considered as a part of the prior art, is that that phrase "prior art" means something that a man skilled therein may by reasonable, or perhaps unreasonable, diligence discover, and he cannot discover that which is contained in a confidential communication to the Commissioner without coming perilously near, if not committing, a criminal offense, something never presumed. This point has been emphasized in this circuit in Mergenthaler v. International (D. C.) 229 Fed. 168, 172, and Leonard v. Maxwell (D. C.) 288 Fed. 62, 66; and appeals did not modify the holdings referred to. 229 Fed. 407; 252 Fed. 584.

Turning now from general considerations to the statutory defenses of R. S. § 4920 (Comp. St. § 9466), the third (that the device in suit has been patented or described in some printed publication prior to the patentee's invention or discovery) and the fourth (that the patentee was not the original and first inventor or discoverer, the defense pleaded in this case) have been discussed in this circuit in Sundh, etc., Co. v. Interborough, 198 Fed. 94, 96, 97, 117 C. C. A. 280. To the rule there stated, and usually formulated somewhat loosely, that copending applications are not prior art as against each other, this circuit has consistently adhered. Another formulation is found in Walker (5th Ed.) p. 60. The facts of this case (under the case cited) do not permit the use of the third defense.

If Clifford had not only described, but claimed, the matter now sought to be used by defendant, the Sundh Case, supra (page 97), is clear in holding that in the absence of other evidence, and because an application is a constructive reduction to practice, Clifford would have been the original and first inventor or discoverer because he filed the first application, and the fourth defense would succeed.

[9] Thus the question is narrowed to this: Does the phrase "first inventor," of the fourth defense, signify one who describes patentable matter, or one who both describes and claims it? An analogy may be taken from R. S. § 4887 (Comp. St. § 9431), providing that one may receive a patent for his invention, even though it had "been first patented * * * in a foreign country," except as provided in the act. What is patented in the foreign country is

the invention, yet it has long been held that, since what may prevent the obtaining of an American patent is the existence of a foreign patent, the two patents must be identical, which means that the "inventions actually claimed" must be identical; for "it is not sufficient that the foreign patent may disclose the invention of the later United States patent, where it is not therein claimed." Westinghouse, etc., Co. v. Stanley, 138 Fed. 823, 71 C. C. A. 189; General Electric v. Alexander (C. C. A.) 280 Fed. 852.

On reason it seems difficult to imagine that anything can rise to the dignity of invention which the discoverer or deviser thereof does not see fit to define by a claim. The inventor referred to in the granting section (4886) and the inventor referred to in the fourth defense of section 4920 must be the same person or kind of person. He is defined in section 4886 as one who has discovered something new and useful, "not known or used by others in this country" before his discovery, and "not patented or described in any printed publication," etc., before said time.

Apply that language to the present case: Did Clifford know in January, 1911, what Whitford knew in the following March? Looking merely at the two applications, Clifford of course could not have known, except from the development of his own thought, for the public, as has been shown, could not know anything about it. Whatever else invention may be, it is an idea, and the quest for its origin is a search for the whole idea, and not a fraction of it. There can be no conception of invention, except in the complete performance of the mental portion of the inventive act. De Laski v. United States Tire Co., 235 Fed. 290, 149 C. C. A. 6. Can it now be said that, by the mere statement of matter which he did not think to use, Clifford had rounded out and completed the mental portion of his inventive act?

We think it cannot. Clifford may be said to have observed certain phenomena, but he certainly drew from them no conclusion that such phenomena contained patentable matter. The question may be thus put: Is mere disclosure (confidentially made to the Commissioner of Patents) and no more, per se sufficient evidence of invention? We think that it is not, for the reason that in the absence of an appropriate claim there is no evidence of the perfection of the mental concept which constitutes the intellectual part of invention.

[10] These thoughts were categorically formulated in Farmers' Handy Wagon Co. v. Beaver, 236 Fed. 731, 150 C. C. A. 63. In this case, completely like the present one on this point, Kohlsaat, J., held that the patent of earlier application was to be considered "for whatever they disclose. This should, we hold, be limited to such matters as are included in their several claims, unaided by their specifications or by extrinsic evidence except where necessary to elucidate and make the same clear."

To this is opposed Lemley v. Dobson, etc., Co., 243 Fed. 391, 156 C. C. A. 171 (6th Circuit), which holds broadly that a patent, the filing date of which antedates the filing date of the patent in suit, is "prima facie anticipatory" page 395). With this statement of rule we must disagree, if for no other reason than that the word "anticipatory" is far too broad.

[11] A patent formally granted may be invalidated, or rendered practically worthless for many reasons, and "anticipation" is a technical name for one of those reasons. The valuable brief of Mr. Ewing as amicus, in our opinion correctly states that when anticipation is proven, the consideration of the patent fails. There can, however, be no anticipation unless constructively, at least, the public was timely in possession of that which the patentee sought to appropriate to himself. But in the present instance the public, as above shown, knew nothing at all about what either Clifford or Whitford had said to the Commissioner, when Whitford filed his application. Consequently Clifford could not possibly anticipate Whitford.

[12] Priority of invention does not mean the same thing as anticipation in invention. The logical reason for sustaining priority of invention is to prevent double patenting, and double patenting is forbidden, not because that phrase can be found in any statute, but because two monopolies of the same entity are inherently repugnant to the essential nature of the patent system. Thus if Clifford had not only disclosed, but claimed, something that Whitford later also disclosed and claimed, the former, under the Sundh Case, supra, would plainly have been the first inventor, not because he disclosed the something, but because he was entitled to the first patent; i. e., because double patenting must be prevented.

[13] For the reasons now set forth we hold that a "first inventor" within the meaning of that phrase as used in the fourth defense of section 4920 must be a person who perfects his invention; no invention can be intellectually perfected, unless it is thought out and concluded, and the only evidence of such perfected invention ordinarily derivable from any patent is a union of disclosure and claim. Evidence of disclosure only (all we have here) is not enough, and before publication disclosure alone does not evidence anticipation.

Thus, in a sense, the question becomes one of evidence, and it is, we think, because evidence of invention is wanted for so many purposes that the use of the word is necessarily attended with peril of inaccuracy, a quite natural peril, considering that the word cannot be effectively defined. McClain v. Ortmayer, supra, page 427 (12 Sup. Ct. 76, 35 L. Ed. 800).

Thus evidence of invention is required upon allegations of prior use, where claims and/or specifications exist only on one side of the contest. Evidence of invention is also wanted in interferences, and above all on questions of infringement, including all matters of patent scope and interpretation. It is in the multiplication of purposes for which evidence of invention is desired that there lies the explanation of the varying ways in which evidence of invention has been found.

Thus, it being elementary that a patent is enforced according to its claims, if for no other reason than that what is sued on is a claim, the most frequent question is: What do the claims mean? Of course they mean to define an invention, and it is often said that the invention is determined by the specification; that is, the meaning of the claims is delimited—i. e., determined—by the specification. Hall v. Ellanam, 213 Fed. 341, 130 C. C. A. 193; Westinghouse v. Metropolitan (C. C. A.) 290 Fed. 661. What is wanted is to get at the meaning of the whole document, claims and all, and the method of so doing has never been better stated than by Sanborn, J., in Jewell, etc., Co. v. Jackson, 140 Fed. 340, 344, 72 C. C. A. 304, 308, thus:

"The true rule is that the specification of a patent, which forms a part of the same application as its claims, must be read and construed with them, not for the purpose of expanding, nor for the purpose of limiting or contracting the latter, but for the purpose of ascertaining their true meaning and the actual intention of the parties when they [the claims] were made and allowed."

A claim may be evidence standing alone, and so may a disclosure standing alone, but ordinarily they are united, and probably it

is true that in most instances of use the disclosure is more persuasive evidence than the claim; but we think no case can be found holding on consideration that a disclosure without a claim is complete, competent, and fully persuasive evidence of perfected invention.

[14] Result is that we disagree with the ruling of Lemley v. Dobson, supra, and find ourselves in accord with the categorical statement above quoted from Farmers', etc., Co. v. Beaver, supra, holding in conclusion that a patent in evidence under the fourth defense speaks only from its date of grant, as to all matters disclosed, but not claimed, therein.

Decree affirmed; no costs.