SUNDH ELECTRIC CO. v. INTERBOROUGH RAPID TRANSIT CO.

(Circuit Court of Appeals, Second Circuit. July 8, 1912.)

No. 201.

1. PATENTS (§ 127*)—VALIDITY—PRIOR PATENT OR PUBLICATION—PRIOR INVENTION.

A later patent was not in the prior art, so·as to invalidate a patent in suit as a prior patent or publication, although it was granted on an earlier application; but it may be proved by competent evidence that the later patentee was the original and first inventor by being the first to both conceive the invention and reduce it to practice, and such prior invention may be shown by his prior application, where there is no evidence to carry the invention of either patentee back of the date of his application, provided the invention of the patent in suit and of such application is the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 179, 180; Dec. Dig. § 127.*]

2. PATENTS (§ 328*)—VALIDITY—PRIOR INVENTION—ELECTRIC CONTROLLER.

The Sundh patent, No. 733,564, for an electric controller, *held* void on the ground that the patentee was not the original and first inventor of the device patented.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Sundh Electric Company against the Interborough Rapid Transit Company. Decree for complainant, and defendant appeals. Reversed.

This cause comes here upon appeal from a decree granting injunction and accounting in a suit in equity for infringement of a patent. The patent is No. 733,564 granted July 14, 1903, to August Sundh, complainant's assignor, for an electric controller. The claims with which this appeal is concerned are:

"1. An electro magnet, an armature therefor, a shaft, means for rotating said shaft controlled by said armature, a circuit-closing lever, a contact-terminal in the path of said lever, and a cam on said shaft constructed to move said lever to close circuit at said terminal.

"2. An electro· magnet, an armature therefor, a shaft, means for rotating said shaft controlled by said armature, a circuit-closing lever, a contact-terminal in the path of said lever, and. a cam on said shaft constructed to move said lever to close circuit at said terminal and to retain said lever in said closed position when the rotation of said shaft is arrested.

"3. An electro magnet, an armature therefor, a shaft, means for rotating said shaft controlled by said armature, a plurality of circuit-closing levers, a plurality of contact-terminals in the path of said levers, and cams on said shaft constructed to move said levers to close circuit at said terminals; the aforesaid parts being timed and constructed to operate said levers to close said circuits successively.

"17. The combination with the solenoid *13*, and its movable core, of the rotary shaft *30*, gearing between said core and shaft for causing rotation of said shaft by said core, pivoted circuit-closing levers *48, 49, 50* and cams *54, 55, 56* on said shaft; the said cams being constructed successively to operate said circuit-closing levers *48, 49, 50.*

"18. The combination with the solenoid and its movable core, of the rotary. shaft *30*, gearing between said core and shaft for causing rotation of said shaft by said core pivoted levers *48, 49, 50* and *62*, circuit terminals in the path of said levers and cams *54, 55, 56* and *74* on said shaft; the

said levers and cams being constructed and timed so that said levers *54, 55,* and *56* are successively actuated by said cams to close circuit and the lever *62* to open circuit."

Arthur B. Seibold and W. Clyde Jones, for appellant.
William B. Whitney, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). An electric controller is a device for regulating the amount of current delivered to a machine which such current operates. When, by closing a circuit the current is, turned on, it is desirable that its entire force should not become operative at once at the working point. Therefore in the circuit there are placed one or more resistance coils, which reduce such force until they are cut out by the closing or opening of other circuits, usually in succession. A familiar instance is the hand-operated controller on a trolley car where the driver moves a lever over successive contact-points, thereby gradually increasing or reducing current. It is often desirable to have the controller automatic. Thus in the case of a water-tank on the roof of a building which is fed by an electrically operated pump, there will be a device which will close circuit and set the pump going when the water sinks to a determined level, and which will open circuit and stop the pump when the water reaches another determined level. The current thus automatically turned on or off is regulated by a controller, also automatically operated at the proper times. The various parts which are combined to produce these results, independent circuits, solenoids, contact-terminals, shafts, gearing, cams, levers and what not are old and well known in the art.

Judge Hazel quoted from a description of the patented device a sufficiently full specification of its parts and their operation, which reads as follows:

"Briefly stated, the throw of a hand switch closes the circuit through the upper winding of a double solenoid, which, when energized, draws up its core and closes the main switch in the motor circuit and thereby starts the motor, with all the resistance in the circuit. At the same time the lower winding of the solenoid is energized, and, drawing up its core against the retarding action of a sash-pot, by means of a rack cut along the back of the core and meshing with a pinion on a cam-shaft, causes the rotation of the shaft, whose cams act successively on the arms of a series of pivoted lever switches, making 'butt' contact with a series of fixed contact-terminals, to close these switches one after another, and thereby short-circuits and cuts out step by step the sections of resistance (and with the last section the series field winding of the motor), and gradually brings the motor from rest up to a condition of full speed. Finally, the last cam on the shaft to operate throws open a normally closed lever switch in the circuit of the lower solenoid winding and cuts out that winding; but its core is held in its elevated position, at the top of its upward movement, by the upper solenoid winding, and in turn holds the camshaft so that its cam will maintain the switches in position, the resistance switches closed and the solenoid circuit switch is open. When it is desired to stop the motor the hand-switch is opened; whereupon the core of the lower solenoid winding drops by gravity, rotating the cam-shaft back to its initial position and allowing a spring to close the solenoid circuit switch and the resistance switches to fall back to

open position by gravity, and then the core of the upper solenoid winding drops."

The conclusion we have reached upon the whole case makes it unnecessary for us to discuss the details of the structure. We may state, however, that besides the particular combination or combinations covered by the claims above cited, the patentee also showed the same combined with a "magnetic snap action," so-called in the briefs, which prevented sparking between levers and circuit-terminals, which snap-action is not covered by these claims; is not employed by defendant and need not be discussed. It is unnecessary also to review the prior art. Judge Hazel's opinion may be consulted for a sufficiently full résumé of its disclosures. He held that none of the prior patents were anticipatory, in which conclusion we concur. He stated the crucial question in the case as follows:

"Did it involve invention at the date of the Sundh application to gear the electro magnetic engine in the form of a solenoid, having a core and dash-pot, to the cam shaft of the lever to make butt contacts with the co-operating fixed contact (circuit) terminals in such a way as to start the motor and move the levers successively?"

In his conclusion that this question should be answered in the affirmative and in the reasoning by which he reached such conclusion we also concur.

[1] Among the patents introduced by defendant was one to Ihlder, No. 742,031, which, as was said by the Circuit Court, "so closely resembles the Sundh patent in suit that the supposition arises that both Ihlder and Sundh were engaged at the same time in solving the problem and each invention performs substantially the same function." If either of these devices were in the prior art, there would certainly be no invention in devising the other. It was held, however, that this patent was not in the prior art. Such holding was correct. The chronological sequence of events is as follows:

June 10, 1902, Ihlder application filed.

March 16, 1903, Sundh application filed.

July 14, 1903, Sundh patent issued.

October 20, 1903, Ihlder patent issued.

No testimony carried the date of either invention back of the date of filing application. The nature of the defense of prior art is succinctly expressed in section 4920, U. S. Revised Statutes, subdivision third:

"That it [the device of the patent] has been patented or described in some printed publication prior to his [the patentee's] invention or discovery thereof, or more than two years prior to his application for a patent therefor."

Ihlder's device was certainly not patented before Sundh's invention, which was completed by reduction to practice on the day the latter filed his application. Nor was Ihlder's application, although it completed his invention by reducing it to practice on the day such application was filed, a "publication" within the meaning of the statute, because it remained unpublished in the secret records of the Patent Office until after Sundh's application had been filed. The Ihlder patent, therefore, was no part of the prior art.

It is contended, however, that the court erred in not sustaining a separate defense based upon the Ihlder patent, viz., the defense enumerated in the fourth subdivision of section 4920, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3395):

"That [the patentee] was not the original and first inventor or discoverer of any material and substantial part of the thing invented."

This is a separate and distinct defense from the third one, and while evidence is not admissible to carry back the date of a later patent, by showing that application for it was filed earlier, the fact that the person who took out such later patent was himself the original and first inventor of the invention in controversy earlier than the plaintiff may be proved, as any other fact is, by competent proof. Barnes Automatic Sprinkler Company v. Walworth Mfg. Company, 60 Fed. 605, 9 C. C. A. 154; Diamond Drill Machine Company v. Kelly Brothers (C. C.) 120 Fed. 295. The various authorities cited in Judge Hazel's opinion and on the brief of appellee are concerned wholly with the other defense, prior patenting or publication.

[2] That Ihlder invented the device of his patent as early as June 10, 1902, the date when his application was filed, is established by the record. Invention involves two things—the mental conception and the application of that conception to the production of a practical result. So long as there is merely the mental conception and such memoranda of it as are intelligible merely to the inventor, his invention is not complete. When, however, he actually constructs the device he has planned, either full size or in model, and the structure is found to work as expected, he has reduced the invention to practice. It is then complete. It is further settled by authority that, even though he may not build a machine or a model, he reduces his invention to practice when he files with the Patent Office an application containing specifications so careful, exact, and complete that a man skilled in the art can, by following their instructions, produce a machine which will meet the description and produce the results which the application asserts it will. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Porter v. Louden, 23 Wash. Law Rep. 689.

In order to maintain this fourth defense it must, of course, appear that the invention of the patent in suit and the invention of the prior application are the same. Thus in Diamond Drill Company v. Kelly, supra, the patent in suit dealt with a beltfastener, the prior application with a bed-spring. That court held that even though it should be found that these were analogous arts, and that the presence of either in a prior field of art left no room for invention in the production of the other, it could not be said that both had invented the same thing. But it does not follow that the two devices must be Chinese copies of each other to warrant the application of this particular defense.

It must be remembered that the specifications include a magnetic snap-action which is not present in defendant's structure. In order to maintain this suit complainant must establish the proposition that besides disclosing the invention of the controller described, with the snap-action, he also disclosed the invention of the controller without

198 F.—7

the snap-action. This contention we think he has made out, and in determining whether he or Ihlder was the original and first inventor the invention to be considered is the one without the snap-action. Ihlder has no snap-action.

Moreover, minuter details, which are susceptible of variation without affecting the novel combination of Sundh, are not to be considered as essential (in the particular form shown in the specifications and drawings) to his invention. If they were, there would be no infringement, because defendant's device is not a Chinese copy of the device shown in the specifications and drawings of the Sundh patent.

Comparing the devices of Sundh and Ihlder we find in both a solenoid engine with its core and dash-pot combined with a switching mechanism comprising a cam plate having cams which co-operate with butt contact switch levers. The cams are moved in Ihlder by reason of the circumstance that they project from a cam-plate which is itself connected to a continuation of the core of the solenoid; in Sundh the cams are moved because they are attached to a rotating shaft which itself gears in a ratchet on the core and rotates as the core ascends. The cams of both are so arranged as to their bearing surfaces as to produce successive movements of the switch levers. In Ihlder this successive movement is of pairs; in Sundh it is of single parts—an immaterial difference. It is not necessary to go into details of the mechanism. The substantial invention of each patent is the invention set forth in the claims when such claims are construed in the light of the specifications. We may best compare the third claims of both patents.

| Sundh. | Ihlder. |
|---|---|
| "3. An electro magnet, an armature therefor, a shaft, means for rotating said shaft controlled by said armature, a plurality of circuit-closing levers, a plurality of contact-terminals in the path of said levers, and cams on said shaft constructed to move said levers to close circuit at said terminals; the aforesaid parts being timed and constructed to operate said levers to close said circuits successively." | "3. In a switch, the combination of a plurality of contacts, a plurality of contact arms provided with contacts co-operating therewith, and means for successively actuating said contact-arms, said means consisting of a movable member provided with bearsurfaces of varying length upon which the contact-arms are adapted to bear, and electro magnetic means for actuating said member, for substantially the purposes set forth." |

Each of these claims reads with great precision upon the devices of both patents. Since both were pending in the Patent Office at the same time, interference should have been declared. Complainant urges the nonaction of the Patent Office as an argument in favor of the proposition that it must have been held by the officials that there were patentable differences between the two structures which made interference unnecessary. There seems to us to be such identity that we can account for the failure to declare interference only on the theory of oversight. If the claims of the Sundh patent are to be construed as covering an invention so broad as to include defendant's device—and we think, in view of the prior act, that they may be so construed—then the invention they cover was reduced to practice by Ihlder's application of June 10, 1902, and complainant cannot maintain

this suit, because it has been shown that he was not the original and first inventor of that invention.

The decree is reversed, with costs, and cause remanded, with instructions to dismiss the bill, with costs.