FAULTLESS RUBBER CO. v. STAR RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit. February 14, 1913.)

No. 2,269.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—NURSING NIPPLE.

The Miller patent, No. 926,011, for a nipple for nursing bottles, claim 1, while vague in some of its terms, *held* not anticipated, and to disclose patentable invention construed in the light of the specification and drawings; also infringed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. PATENTS (§ 157*)—CONSTRUCTION OF CLAIM.**
> In determining whether the language of a claim is too vague, the inquiry must be whether, taking into account the specification and approved aids to interpretation, it is reasonably possible to determine what the claim does or does not cover.
>
> [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. § 157.*]

**3. PATENTS (§ 118*)—VALIDITY.**
> A patent should not be held invalid only because its language may be too vague for application to some possible future case.
>
> [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 170, 170½; Dec. Dig. § 118.*]

Appeal from the Circuit Court of the United States for the Northern District of Ohio; Wm. L. Day, Judge.

Suit in equity by the Faultless Rubber Company against the Star Rubber Company. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 191 Fed. 982.

The Faultless Rubber Company owns patent No. 926,011, issued to it June 22, 1909, as the assignee of Thomas W. Miller. The subject-matter is a nipple for nursing bottles. The specification states as one of the objects "to prevent any contraction of the opening from the body portion into the mouthpiece of the nipple under compression of the same." The claim said to be infringed is claim 1, reading as follows:

"1. A nursing nipple, embodying a mouthpiece, a neck, and an intermediate body portion flaring from said neck to receive the bead of the bottle neck, the upper wall of said body portion projecting inwardly at an acute angle from its point of greatest width to form a substantially flat wall, the diameter of the opening from said body portion into the mouthpiece being relatively small in comparison with the diameter of said body portion."

Figures 1, 3, and 4 of the drawing, showing the device when applied to and separate from the bottle, are here reproduced; as is also the Ingram nipple, the closest single approximation in the earlier art.

The nipple made by defendant is not distinguishable from that shown by the patent, and the record involves only the question of validity. The district judge thought that no patentable invention was involved, and dismissed the bill.

P. B. Hills, of Washington, D. C., for appellant.

Clarence E. Humphrey, of Akron, Ohio, and George W. Rea, of Washington, D. C., for appellee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before WARRINGTON and DENISON, Circuit Judges, and Mc-
CALL, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] It
was common to find in such nipples, and in combination in one device, a
mouthpiece and a neck and an intermediate body portion flaring from
the neck to receive the bead of the bottle neck. The invention in this
case must be found, if at all, in adding to this combination two fea-
tures: First, that this intermediate, flaring body portion should have
its upper wall projecting inwardly at an acute angle from its point of
greatest width so as to form a substantially flat wall; and, second,
that the opening from the body portion into the mouthpiece should be
relatively small in comparison with the diameter of the body portion.
It must be said, also, that the record shows nipples which had the
opening from the body portion into the mouthpiece smaller than the
diameter of the body portion; indeed, this was common. There were
also nipples which had, at a point considerably above the bottle neck,
and not adapted to receive its bead, a portion flaring out and then
sharply in again. There is no one which has the upper half of the
bottle neck enlargement dropping in sharply from its widest point and
shaped more nearly like a very flat cone than like a hemisphere or a
swelling tube, and having the mouthpiece opening contracted as greatly
as in the drawing of the patent. To use this form of body portion
enlargement, in this association with the bottle neck, and in connec-
tion with the small opening to the mouthpiece, constituted a new com-
bination. However, this conclusion is not determinative. Many com-
binations of old elements are novel combinations and yet involve no
inventive thought.

During its prosecution before the primary examiner, the claim read
thus:

"A nursing nipple embodying a mouthpiece and bottle engaging neck and
an intermediate body portion, abruptly flaring both from said neck and from
said mouthpiece and forming an abrupt angle at the point of greatest width."

This claim was finally rejected on reference to the most pertinent of
the same anticipations now relied upon. On appeal, the board of ex-
aminers sustained the primary examiner, but recommended the al-
lowance of a claim which became the first claim of the patent when
issued. This history shows that the board thought the application
disclosed invention, but that the invention was not stated precisely
enough to identify it as distinguished from the prior art, and recom-
mended this claim as its idea of the proper formulation of the inven-
tion which had been so made. The earlier claim provided that the
body portion should be abruptly flaring from both the neck and the
mouthpiece, forming an abrupt angle at the point of greatest width.
The board evidently thought this "abrupt flare" and "abrupt angle"·
differed only in degree from Ingram, and sought for language to ex-
press the peculiarities of construction which resulted in the observed
difference in operation; hence came the requirement that the upper
wall of this enlarged portion should be "substantially flat" and the
mouthpiece should be "relatively small."

202 F.—59

We agree with the board that the specification and drawings disclosed a novel combination giving a useful, new result, and entitled to protection by patent. One practical difficulty which Miller sought to avoid was the collapsing of nipples while in use. Evidently, a mere tube, when bent sharply to one side or when pushed inwardly so as to make ·a bend, would collapse and ·close. It is the patentee's theory that in the Ingram nipple the enlarged body portion is still so characteristically a tube that, if the mouthpiece is pushed inwardly or bent to one side, either the opening into the mouthpiece or the two together will collapse; while, in the Miller device, this upper part of the enlarged body portion is so predominantly a diaphragm that it cannot break over, and instead, it yields longitudinally to a push or pull (see Fig. 3), and, when the mouthpiece is turned sidewise, the diaphragm also turns. The arch of Ingram would resist against a sidewise bend of the mouthpiece, and the opening into the mouthpiece would collapse, but the diaphragm yields and the mouthpiece remains open. This result, as a new and useful result, seems probable enough on inspection of the patent and the earlier patents, and observation of samples, as far as they were submitted to us, confirms this idea. In any event, the utility of the new combination is probable enough, evidenced, as it is, by extensive public adoption, so that the defendant who has copied cannot be heard to deny such utility. Diamond Co. v. Consolidated Co., 220 U. S. 428, 440–1, 31 Sup. Ct. 444, 55 L. Ed. 527.

Undoubtedly, the changes made by Miller were, in physical form, very small and closely approximate to those mere changes in form or in degree which are not patentable; and the case is near the margin line. Controlling precedents cannot be cited, but the cases on the Grant rubber tire patent show an instructive analogy. The same general point of view which led this court in Goodyear Co. .v. Rubber Tire Co., 116 Fed. 363, 53 C. C. A. 583, to hold that patent invalid might not unnaturally be so applied to this case as to reach the same result; while that view of what, in a given case, constitutes invention, which led the Supreme Court to reach a contrary result on the Grant patent (Diamond Co. v. Consolidated Co., supra), might well have similar effect as applied to the facts on this record.

[2] The language of the claim presents a question not free from difficulty. Such language must be sufficiently intelligible to mark the boundaries of the monopoly; and we have held that a claim was invalid which, when fully construed, called for a "thin" plate. Bullock Co. v. General Co., 149 Fed. 409, 79 C. C. A. 229. This case and its underlying principle suggest the serious question whether the requirement for a "substantially flat wall" and a "relatively small" mouthpiece opening are fatally vague, in the absence of any statement how far the wall may vary from a state of absolute flatness or what the proportions should be between the extreme body portion and the mouthpiece opening.

We do not understand the Bullock Case as holding that the claim must always carry within itself everything necessary to determine its concrete applicability, or as intended to be in conflict with the principle that the specification, drawing and claim constitute one instrument, each part of which must be construed with reference to every

other part. If words in the claim, normally importing the exact limit to which they reach, may, by their context, be given a broader or a narrower application than very literalness implies, so must words which in form allow a margin of uncertainty be interpreted by their context so as to fix the limits of their real meaning. The inquiry must be whether, taking into account the elasticity of meaning added by the specification to definite words of claim or the limits of elasticity fixed by the specification for a superficially indefinite claim, it is still reasonably possible to determine, by the claim itself and by the approved aids, what the patent does or does not cover.

In the present case the specification says, and with evident reference to the declared object above recited, that:

"The substantially flat and comparatively wide upper wall of said body portion will still yield evenly under compression whereby any contraction or choking of the opening therefrom into the mouthpiece will be prevented."

In this connection the "substantially flat" wall means a wall flat enough to act in this manner and to accomplish this result, or, it might be said, a wall characterized by diaphragm-like yielding rather than by arch-like resistance. This interpretation furnishes sufficient certainty for applying the requirement of a "relatively small" mouthpiece opening. Clearly, this opening must be large enough to permit the flow of the milk. Clearly, too, if it was almost as large as the extreme diameter of the body portion, there would not be enough of this body portion left intervening between the mouthpiece opening and the extreme diameter to permit the characteristic action. Clearly, too, the mouthpiece opening must be small enough, and therefore stiff enough, so that, when the mouthpiece is tipped sidewise, the circular opening will distort the diaphragm and remain open rather than itself be collapsed and closed.

[3] The nipple shown in complainant's patent and the nipple made by defendant come well within these limitations. It may be that one could be constructed which, with all the permissible aids to interpretation, could not be classified as within or without the claim. It will be time enough to meet such a case when it arises. It is at least as probable that such a construction would be either mechanically impossible or commercially worthless. The Supreme Court has now firmly established the rule that a statute will not be held broadly invalid because its general language extends to some class, as to which its operation would be constitutionally forbidden. It will consider no such question, until the objection is made by one of the class which has the right to complain. It seems matter of fair analogy to say that a patent shall not broadly be held invalid only because of the possibility that in some future case its language may be too vague for intelligent application, when, in the only case which has arisen, and perhaps the only case which ever will arise, there is no such difficulty. The fact that a man's title to the edge of his field is doubtful is no defense to a trespasser on that part where the title is clear.

There should be the usual interlocutory decree for injunction and accounting; and the record will be remanded for that purpose, with costs of this court to appellant.