BEITMAN v. STRATER.

(District Court, N. D. Ohio, E. D. July 31, 1917.)

No. 377.

PATENTS 328—FOR WIND SHIELD CLEANER VALID AND INFRINGED.

The Beitman patent, No. 993,816, for a wind shield cleaner, limited to the precise structure described and claimed, *held* not anticipated, and, while for a combination of old elements, to disclose invention, in view of its superior utility, simplicity of operation, and its commercial adoption and success; also *held* infringed.

In Equity. Suit by Albert B. Beitman against J. Edward Strater. Decree for complainant.

Hull, Smith, Brock & West, of Cleveland, Ohio, for plaintiff.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Charles H. Wilson, of New York City, for defendant.

WESTENHAVER, District Judge. Complainant, Albert B. Beitman, in his bill alleges that he is the owner of letters patent No. 993,-816, dated May 30, 1911, and charges infringement thereof by the defendant. The answer denies infringement, and avers that the construction described in complainant's patent has been described and patented in certain letters patent of the United States, a list of which is given in the answer, and also avers that, prior to the complainant's alleged invention and discovery, said invention was known to and used by certain persons, whose names and addresses are given, among them one Charles J. Heineman, to whom later letters patent were issued. The case has been fully heard on the bill, answer, and proofs.

Complainant's invention relates to an improvement in a wiper or cleaner for window panes or transparent screens, employed as wind shields on automobiles or other vehicles. It is called in the patent "a wind shield cleaner." Its purpose is to clean the outer or front side of automobile wind shields or street car windows of accumulating mist, rain, snow, or frost, and thereby afford the driver free observation while the automobile or street car is in operation. The cleaning device is an adaptation of the old squeegee principle of cleaning windows. The cleaning of the wind shield is accomplished by means of an elastic strip of rubber so adjusted as to be held and compressed against the wind shield front, which is operated by an arm or handle, connected therewith, and extending to the driver's side, thus permitting operation by the driver while the automobile is in use.

The combination of elements making up the invention consists of a depending arm or holder on the outside, to which is attached the rubber cleaning strip; a shaft attached thereto, and extending at right angles transversely across the top of the wind shield; a depending arm extending downwardly from this shaft on the inside, adapted to be used as a handle; a supporting bracket adapted to be mounted on the top edge of the wind shield, and adjusted thereto in any desired position, by means of which the shaft, the outside wiper arm, and the inside handle arm are supported, carried, and operated.

The construction is exceedingly simple and economical. It may be put on and taken off quickly, and without marring the wind shield. The shaft and both depending arms are made up of the same piece of metal. The supporting bracket is made in two pieces, adapted to go over the upper edge of the wind shield, and to be clamped thereto in the desired position by means of a bolt and nut. The bolt passes through the upper edges of the two-piece bracket; the shaft also passes through the upper edge of the bracket. The inside depending arm is equipped with a wooden or rubber wheel or button at the lower end. This wheel, by means of a spring action of the two depending arms, is

compressed against the wind shield, thereby procuring a frictional engagement of the elastic rubber strip with the front side of the wind shield. This wheel revolves as on an axle against the inside of the wind shield, and serves as a carrier for the inside handle arm. When adjusted and in position, the bracket is clamped rigidly to the wind shield frame, and the handle and cleaner are operated back and forth, describing an arc of a circle, thus cleaning the wind shield on the outside.

The foregoing describes the simple form of construction commercially developed and sold by complainant. The specifications and drawings of his patent show a more complex device. The inside depending arm is also provided with a set screw in addition to the wheel, and an additional arm fitting against the wind shield, whereby the handle arm may be rigidly locked to the other member. The supporting bracket is equipped with a thumbscrew whereby the bracket may be fastened, but not clamped rigidly to the wind shield frame. With these additional features, and with the handle arm thus locked, the cleaner was designed and adapted to operate back and forth longitudinally with the wind shield.

As already stated, however, the device as commercially developed and sold eliminates these features, and embodies only the simple elements and method of construction and of operation already described. The device thus developed and sold is, however, described in the specifications, and also, it is contended, is included within claims 1 and 6 here relied on, of complainant's patent.

Defendant's construction differs only slightly from complainant's. The shaft extending transversely across the top of the wind shield, and connecting the two depending arms, is somewhat shortened, and is bent or curved; whereas, complainant's extends at right angles straight across the top of the wind shield. The handle or inside depending arm of defendant's construction is not equipped with a wheel or button, but has an elastic rubber strip constructed and operated on the same principle as the outside rubber strip, being thereby designed to clean both sides of the wind shield at the same time. The construction of the rubber strip is exactly like complainant's. The supporting bracket is made in one piece, instead of two pieces, and is designed to be attached by its own spring action to the wind shield frame. The depending arms are bent or offset at an angle about 2 inches from the shaft, thus permitting the depending arms to lie more closely to the frame when not in operation.

If complainant's patent is valid, defendant's construction undoubtedly infringes; in fact, defendant, upon the hearing, did not seriously contend to the contrary, and I shall not, therefore, discuss further, in this opinion, the question of infringement. Complainant relies on claims 1 and 6; they are as follows:

1. A wind shield cleaner comprising a shaft arranged to extend transversely of an edge of a window pane or transparent screen; a suitably supported bracket bearing the shaft and adjustable longitudinally of the same edge; and a wiper holder having a wiper which is arranged to make contact with and extend over the outer side of the pane or screen, said wiper holder being

connected to the shaft, so as to swing the wiper over the said side of the pane or screen during an oscillation of the shaft.

6. The combination, with an upright window pane or transparent screen forming a wind shield, of a shaft arranged above and transversely of the top edge of the pane or screen, which shaft terminates at the outer side of the pane or screen in a depending arm which is spaced from the pane or screen, said shaft terminating at the inner side of the pane or screen in a downwardly projecting lever, which is spaced from the pane or screen and arranged substantially parallel with the aforesaid arms; a suitably supported bracket bearing the shaft, and a wiper arranged between the foresaid arm and the outer side of the pane or screen and extending longitudinally of and connected to the said arm.

These claims, it will be noted, embody no more than the simple construction described above, and developed and sold commercially; certainly they do not cover more, although it is contended that they cover less. In my opinion, these two claims adequately cover complainant's construction, and furnish, when considered with the drawings and accompanying description, sufficient detail and information to enable a skilled mechanic to construct and reproduce the patented article.

Defendant's main contention is that, in view of the prior art as disclosed in letters patent of the United States, complainant's patent is invalid for want of novelty or invention. In support of this contention he has pleaded and offered in evidence the following patents: B. L. Cohn, No. 694,615, dated March 4, 1902; Mary Anderson, No. 743,801, dated November 10, 1903; T. J. Short, No. 856,428, dated June 11, 1907; F. Ames, No. 866,996, dated September 24, 1907; O. Caesar, No. 887,585, dated May 12, 1908; C. E. Prickett, No. 942,743, dated December 7, 1909; T. J. Rochford, No. 944,245, dated December 21, 1909; C. A. Kelloff, No. 956,770, dated May 3, 1910; C. J. Heineman, No. 1,112,793, dated October 6, 1914. Some others were pleaded, but were not introduced in evidence, and are not relied on.

Of these letters patent, defendant asserts that the Cohn patent embodies every element of claims 1 and 6, and is a complete anticipation. I do not agree with this contention. Cohn's patent is for a window washing device, and is not designed or intended to remove snow, frost, or mist from a wind shield or a street car window. A small-sized model of it was constructed by defendant's expert, and introduced in evidence. The device is constructed so as to be clamped to the window sill or frame. The supporting member is offset from this clamp and carries two substantially parallel arms, extending upward therefrom, one on each side of the sash, thus embracing the glass. These arms are provided with rubbers at the ends, and these rubbers are, by the spring action of the carrying arms, compressed against the window frame. The operator, standing inside the room, may by shifting the window pane up and down, and moving the arms back and forth, wash both sides of the window. In order to reach the edges and corners of the window pane, the arms carrying the rubber are constructed so that the operator may lengthen the same, thereby extending the rubbers into the corners and angles.

This device is novel and discloses invention, but, in my opinion, is obviously lacking in utility. It is a clumsy, impractical device, which

the evidence does not show ever went into practical use, and an examination of the model convinces me that it disclosed nothing to Beitman or any other person desiring to construct a wind shield or street car window cleaner, designed to remove mist, snow, or frost while the car is in operation.

Some others of the patents, however, are more nearly in point, particularly the Rochford, Ames, Anderson, Short, and Heineman patents. Each of these requires consideration.

The Rochford patent is described as being adapted for use in cleaning automobile wind shields, street car windows, and the like. It has a downward depending arm on the outside, equipped with a rubber strip operating on the squeegee principle. It has a handle connected with the outside arm and extending transversely over the top of the wind shield, and downwardly on the driver's side, by means of which it is operated. It has a carriage attached to the outside of the top frame, on which the cleaner rides back and forth as on a track. The cleaner arm is permanently riveted through outwardly extending ears. In operation, the downward depending arm is moved back and forth longitudinally on the front of the wind shield. Frictional engagement or compression of the rubber strip against the wind shield is obtained by means of a spring, and not by the spring action of the two depending arms. Apparently, without modifications, the carriage could be attached only to a wooden or flat frame, and, when once attached, becomes a permanent fixture, not easily removed.

The Ames patent has a wiper bar constructed preferably of a split tube, in which is secured the wiper, which is preferably composed of a rubber tube. This wiper bar is fastened to the inside handle through a lower corner of the wind shield, or its frame, by means of a journal and a bearing. The inside handle is not an arm, and the compression is not obtained by spring action of the arm. The driver, by turning the handle, moves the wiper bar over the outside of the pane, thereby cleaning the same.

The Anderson patent is similar in construction to the Ames device. The outside cleaning bar is connected with the inside handle through the upper corner of the sash or frame. The wiper bar is preferably made in two sections. The compression or frictional engagement of the cleaner is obtained by means of spring action, not provided by the arms, but by the method of construction whereby the rubber is held in yielding contact against the glass with sufficient pressure to clean the same.

The Short patent has two similar arms, one on each side of the pane. It was designed exclusively for cleaning street car windows. Its method of construction and attachment would not seem to admit of its use on wind shields. The arms are both equipped with elastic rubber strips, and are bolted firmly to the frame or sides. The inside is equipped with a knob, and the two together serve as a handle whereby the cleaner arm may be moved back and forth over the window pane.

The Heineman patent is also relied on as a part of the prior art. It was applied for December 21, 1910, but the letters patent were not issued until October 6, 1914. The application for the Beitman pat-

ent was filed January 6, 1911, and the patent was issued May 30, 1911. It appears, therefore, that Heineman made his application first, while Beitman first obtained his patent. In my opinion, this patent is not a part of the prior art, because for prior art purposes a patent speaks only from the date of its issue. It is, however, in my opinion, relevant on the issue that Beitman was not the first inventor, but that the invention was known to and used by Heineman at an earlier date. Nothing else appearing, except the respective application dates, the one earlier in time will control, if the invention embodied in the earlier application is the same as that covered by the second application and earlier patent. The law in this respect is, I believe, correctly stated in Sundh Electric Co. v. Interborough Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280. I shall therefore consider the Heineman patent, not as a part of the prior art, but as bearing only on the issue of whether or not Beitman's invention was known to and used by Heineman at a date prior to its invention by Beitman.

The Heineman construction has a similar depending arm on the outside, also equipped with an elastic rubber squeegee strip. This arm extends transversely over the top of the wind shield, and downwardly on the inside, and is provided on the inside with a spring stud adapted to press against and ride upon the surface of the glass, thus holding the rubber strip firmly in wiping contact against the front surface as the guide arm is moved back and forth in the act of cleaning. The compression is obtained by means of this spring stud, and not by the spring action of the depending arms. These arms are not supported by an adjustable two-piece bracket, but are attached to a guiding clamp adapted to ride upon the wind shield frame. This clamp, while designed to be permanently affixed to the wind shield, is not, nevertheless, rigidly clamped thereto. It is called a "guiding clamp," and is intended to ride back and forth on the wind shield frame. In operation the wiper arm and handle do not oscillate, describing an arc of a circle, but move back and forth with the guiding clamp. The guiding clamp, when once attached, becomes a permanent fixture. It is not equipped with a simple bolt and nut, so that it may be put on and taken off readily. These are the essential differences between the Heineman and Beitman constructions.

If the foregoing patents do not anticipate, or if the exact Beitman invention is not embodied in the Heineman patent, then none of the other patents can be said to anticipate, for none of them so nearly approximate the elements of the Beitman patent. I shall not, therefore, refer further to the other patents in evidence.

From the foregoing review it is evident that this case is of that class known as "border line" cases. Whether or not invention is present is a question respecting which different minds may well come to different conclusions. Assuming, as is required by the settled rule, that Beitman, in making his invention, had before him all these prior art patents, it is obvious that his patent must be limited to the exact construction therein described and claimed. The question is whether the simple combination of old elements thus made embodies patentable invention. All of these elements are old, and while the question of

what in the combination involves invention, as distinguished from mere mechanical skill, is not free from doubt, I am of opinion, after careful reflection and a balancing of all the considerations, that actual invention is present in his patent, and that his invention is not anticipated. I shall briefly summarize the main considerations bringing my mind to this conclusion.

It appears from the evidence that Beitman in fact actually invented the construction embodied in this patent. When he conceived the idea of developing a wind shield cleaner to overcome the difficulties in driving, due to an accumulation of rain, mist, snow, and ice, he made inquiries first of all houses selling automobile supplies and accessories, and was informed that there was no cleaning device on the market. He thereupon proceeded to develop his wind shield cleaner, and, as soon as he had developed it, made his application for a patent. In the first year thereafter, namely, 1911, the sales were small (only about 100); but they have since steadily increased, and during the last preceding year the sales, the evidence shows, have been from 40,000 to 50,000. This acceptance and practical use, it is well settled law, is, in doubtful cases, entitled to great weight. It does not appear that any of the wipers or cleaners embodied in the anticipating patents were successful commercially, or went into general use. The mere fact of their failure is a circumstance indicating that Beitman was successful in overcoming defects which made them failures, and that his success was the result of invention, and not mere mechanical skill in construction or adaptation, or in advertising and selling methods.

The defendant has closely imitated complainant's construction; in fact, he has modeled his device after complainant's, endeavoring to improve slightly thereon. It is not different in any substantial respect, except that he has duplicated on the inside the outside depending arm. The two arms, however, are alike in construction and function. It was equally open to defendant to adopt a construction like that of Rochford, Ames, Anderson, Short or Heineman, or that of any of the other anticipating patents. He has paid to Beitman's patent the tribute of imitation, and he has furthermore made application for a patent on this slightly changed imitation. It ill becomes him in this situation to deny utility or invention in the device which he has so closely imitated.

In what respect, then, does Beitman's device differ from the earlier patents, and why has his device succeeded when others have failed? In my opinion, the answer is to be found in its simplicity, economy of construction, facility of adjustment, and ease of operation. His advance in this respect is so marked and different as, in my opinion, to amount to invention. He realized that a wind shield cleaner, to be successful and win public favor, must be cheap, simple, and economical; that it must be so constructed that it could be put on and taken off as desired; that it should not be attached to the glass or frame, so as to mar or injure the glass or frame; that any device which, either in attaching or operating, marred or injured the glass or frame, or made it a permanent fixture, or involved expense in constructing, attaching, or removing, would not meet the requirements of automobile owners.

All of the other patents failed in some one or another of these respects. All of them, except Heineman's, require a marring of the frame or glass, and even Heineman's is designed to be permanently attached, and it is evident that its method of operation would, in a short time, by rubbing, mar the supporting frame. Beitman overcame all these objections by a combination of simple elements. His act in this respect rises to the dignity of invention.

The principles of law are well settled; the difficulty is in applying them to the facts of the case. I shall not, therefore, cite or comment on the many cases cited by the different counsel, all of which, however, have been given careful consideration by me. I will, however, as illustrating and emphasizing the reasons which have brought me to this conclusion, cite a few pertinent extracts from unquestioned authority.

In Topliff v. Topliff, 145 U. S. 156, 164, 12 Sup. Ct. 825, 828 (36 L. Ed. 658), Mr. Justice Brown said:

"While the question of patentable novelty in this device is by no means free from doubt, we are inclined, in view of the extensive use to which these springs have been put by manufacturers of wagons, to resolve that doubt in favor of the patentees, and sustain the patent."

In Heekin v. Baker, 138 Fed. 63, 70 C. C. A. 559 (8 C. C. A.), the court said:

"None of its elements was new, and it did not produce a new result; but we think the record clearly discloses that the combination, although of old elements, was new, and that it accomplished an old result in a more facile, economical, and efficient way. This gave it patentable novelty. * * * The merits of the device consist in the simplicity and cheapness of its construction, the ease of its operation. * * * But if the questions of novelty and merit were otherwise left in doubt by the evidence, they would have to be resolved in favor of the patent, because of the immediate and general use into which the device is shown to have gone when it was put upon the market."

Complainant's device and its acceptance by the public meets these standards of patentable novelty. It may also be said of this device, as was said in Faultless Rubber Co. v. Star Rubber Co., 202 Fed. 927, at page 930, 121 C. C. A. 285, at page 288 (6 C. C. A.):

"This result, as a new and useful result, seems probable enough on inspection of the patent and the earlier patents, and observation of samples, as far as they were submitted to us, confirms this idea. In any event, the utility of the new combination is probable enough, evidenced, as it is, by extensive public adoption, so that the defendant who has copied cannot be heard to deny such utility."

It may also be said of the situation now before me, as was said by Judge Baker in Railroad Supply Co. v. Hart Steel Co., 222 Fed. 261, 274, 138 C. C. A. 23, 36:

"They [courts] should consider the patentee's equities in his business which has developed under the presumptive validity of the patent, should give heed to the place achieved by the patented article in the field of the practical art since the date of the patent, and should therefore decline to sustain the defense of noninvention and to strike down the patent and the business built upon it unless that defense has been established beyond a reasonable doubt."

Upon the whole case I am of opinion that the situation here is controlled by the Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527, and similar cases, and not by Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438, Railroad Supply Co. v. Elyria Iron & Steel Co., 213 Fed. 789, 130 C. C. A. 447, Id., 244 U. S. 285, 37 Sup. Ct. 502, 61 L. Ed. 1136, decided May 21, 1917, and similar cases.

A decree will be entered, sustaining the validity of claims 1 and 6 of complainant's patent, granting an injunction, and directing an accounting to be had, if complainant so desires.