VACO GRIP CO. v. SANDY MacGREGOR CO. et al.

(District Court, N. D. Ohio, E. D. June 7, 1923.)

No. 853.

1. Patents ⬩129—Infringer making substantial copy cannot deny utility.

Defendant who has made substantial copy of plaintiff's patented device is in no position to deny its patentable utility, and for that reason, coupled with prima facie presumption of utility arising from issue of patent and from substantial sales and use, the patent cannot be deemed void for want of utility.

2. Patents ⬩328—1,439,338 and 1,439,339, for golf practicing and exercising device, held valid in part and infringed.

Claims Nos. 3, 4, 6, 9, and 15 of the Smith patent, No. 1,439,338, and claims 1–4, 8, 9, 12, and 13 of the Smith patent, No. 1,439,339, for golf practicing and exercising device consisting of mat and ball attached to button in bottom of mat by elastic pneumatic rubber tube, held to involve invention and infringed, but claims 1, 2, 5, 12, 13, and 14 of No. 1,439,338, and claims 5–7, 10, and 11 of No. 1,439,339 invalid for want of invention.

3. Patents ⬩237—Infringement not avoided by substituting different material or making trivial changes even though patentable improvements.

Infringement of patent for golf practicing device cannot be avoided by substituting cocoa mat for rubber mat, especially when rubber was merely designated as preferred material, or by giving the mat a metal base or using slot therein instead of fork or substituting loose button held by lugs instead of integrally formed button, even though such changes are patentable improvements.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Vaco Grip Company against the Sandy Mac-Gregor Company and others. Decree for plaintiff.

F. E. Shannon, of Akron, Ohio, for plaintiff.

Turney & Sipe, of Cleveland, Ohio, for defendants.

WESTENHAVER, District Judge. This is a patent infringement suit based on United States letters patent Nos. 1,439,338, issued December 19, 1922, on application filed December 17, 1920, to Harry W. Smith, and 1,439,339, also issued December 19, 1922, on application filed June 1, 1921, to Harry W. Smith. Title, it is admitted, is now in plaintiff. Claims 1, 2, 3, 4, 5, 6, 9, 12, 13, 14, and 15 of the first patent, and all 13 claims of the second patent, are in issue and charged to be infringed. The defenses are invalidity for lack of novelty and of invention, and noninfringement.

Smith's patents were issued for what is called a golf practicing and exercising device. They are alleged to be, and in my opinion are, susceptible of conjoint use. The device as made and sold commercially is accurately described in the second patent. Its material features are: A base member, called a "rubber mat," an object member, called a "hollow rubber ball," and an elastic connection, called a "hollow rubber tube," to hold the ball captive in a teed position and to return it automatically to that position. The base member or rubber mat is rectangular in form. It is notched at one end like a bootjack. It has a channel or groove on its bottom side leading from the notch at one end to a circular recess in the other. It has in that recess a depending knob or button, formed integrally with the mat. The construction of the ball and elastic cord and the means for connecting the two together are specific and claimed as important features of the invention. The ball, in addition to being hollow and made of soft rubber sufficiently stiff to be easily collapsible and yet return almost instantly to its normal shape, has a small hole at its top to aid collapsibility and is provided with a larger hole in its base to admit the specific means of connecting it to the elastic cord or tube to the base, and is made with a downwardly projecting annular flange integral with the body of the ball, thereby forming a tee. This base is cylindrical and projects radially from the ball. The elastic member is made of hollow tubing, each end of which is turned back upon itself and securely tied, thereby forming in effect a pneumatic rubber tube. A disc of felt or other soft material small enough to be inserted in the ball by expanding it, and large enough to remain permanently fixed after insertion, is attached to the rubber tube at one end, and the rubber tubing is at the other end attached to the depending button. The groove or channel in the bottom of the rubber mat is deep and wide enough to hold the elastic rubber tube and permit its free expansion and contraction to accommodate the movement of the hollow ball. By these means the ball is held in an upright teed position on top of the mat at the fork or notch and is returned after being struck, automatically to that position.

This device is designed for use by beginners and other inexpert golfers in practicing golf strokes, particularly with a driver or brassie.

It may be used out of doors and indoors during the winter season or bad weather. It is said to be a useful exercising device as well as a golf training device. Its advantages are proved only by Smith, the inventor, and the statements of his patent specifications. They are said to be many, particularly that it is a valuable aid to a beginner in acquiring proficiency in accurately striking the ball; that it enables him to perceive by the direction the ball takes the force and accuracy of his stroke; that he may develop a straight drive, pull, or slice, and for this purpose targets are supplied, with instructions as to the position and distance at which they shall be placed from the ball. When the ball is struck, it returns automatically to its teed position. The specific construction of the ball and of the tube and its connecting means, it is said, give the device great durability.

[1] The questions mainly argued relate to whether or not invention is present, particularly in view of the prior art. That utility is present, it is said, is shown by the prima facie presumption resulting from the issue of the patent and from substantial sales and use. The evidence tends to show that 1,000 a month are being made and sold. Whether these sales are evidence of utility in the device, or senility, or some form of arrested mental development in the buyer, may well be open to question. The defendant, however, has made a substantial copy of this device, and is not, therefore, in a position to deny its patentable utility; and for this reason, coupled with the prima facie presumption, it must be held that the patent is not void for want of utility. See Faultless Rubber Co. v. Star Rubber Co. (6 C. C. A.) 202 Fed. 927, 930, 121 C. C. A. 285; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 440, 31 Sup. Ct. 444, 55 L. Ed. 527.

[2] The prior art consists wholly of United States and British letters patent. The evidence tends to show that no golf practicing or exercising device was in existence or in general use at the time Smith developed his device. There is no practical art or industry to which we can look to determine the skill of a mechanic as applied to Smith's advances over the prior art. Among the patents cited and relied on, the following are the most pertinent and important, namely: United States letters patent 567,455 to Dalziel; 667,563 to Oakley; 883,058 to Sprague; 914,873 to Peter; 1,022,339 to Sloan; 1,014,233 to Kip; 1,091,985 to Thompson & Dromgold; 1,224,410 to Porte; 1,210,970 to Nott; 1,326,976 to Schnurr; and British patents Nos. 16,908 of 1894 to Turnbull, and 11,887 of 1901 to Crowley. Some of these are in the golf practicing device art, and others in the toy art, showing captive balls. Of this art, defendants admit that Dalziel, in combination with Turnbull, Crowley, and Porte, are the most pertinent, and assert that if anticipation is not thereby shown, certainly no invention was required in the light of their disclosures to design Smith's device. I agree that if these several patents do not show anticipation or deprive Smith of the quality of an inventor, the others cited certainly do not.

Dalziel is intended to provide a surface from which to drive golf balls, whereby the necessity for building sand hills and using portable tees will be obviated. His device consists of a block of flexible material carried in a frame sunk in the ground so that the central top surface of

the block comes level with the turf or green. A flexible height-adjustable tee for the ball to rest on is provided. This tee works in a slot in the surface of the block and is carried on a moveable joint connected to a spring so that if the tee itself should be struck, it will move downward in the slot and be returned automatically to an upright position. The specifications also disclose that his device may be made available for practicing purposes by forming the golf ball integrally with the tee and widening the slot. This is all Dalziel discloses. Turnbull is a golf practicing apparatus. His device consists of a revolving golf ball, mounted in a small box upon a horizontal axle, with a vertical spindle at the middle of the axle and a weighted golf ball at the lower end of the spindle. The upper end of the vertical spindle serves as a tee and carries the golf ball. It is held in a teed position by the weighted ball at the lower end. The principle of operation is that when the golf ball is struck, the spindle will revolve on the horizontal axle, and when the revolutions stop, the golf ball will be again in position at its upper end. This is all Turnbull discloses. Crowley's device is for a captive golf ball for practicing golf in a confined space. It comprises a hollow rubber ball and a tee in combination, a string, elastic or not, as preferred, attached to the inside of the ball, and a parachute or suitable drag attached to the free end of the string. The ball is filled with hair, cotton, wool, or other like resilient material to prevent its tearing or splitting when struck. The parachute or drag is the means to confine the ball or hold it captive and prevent it from traveling, when struck, any great distance and thus help a lazy man to recapture it without much walking. This is all Crowley discloses. Porte is even less pertinent. His device is a complicated mechanical apparatus with a golf ball attached by a staple and ring to an inclined wire and a free golf ball on an inclined runway. The principle of operation is that the captive ball may be driven up the inclined wire against the upper end of a pivoted apparatus and the force of the impact transmitted to the free golf ball resting against the lower end of the apparatus. The distance traveled by the free ball on the inclined runway measures the force of the stroke. This is all Porte discloses. Schnurr, Thompson & Dromgold, Kip, Sloan, Peter, Sprague, and Oakley merely show balls held captive, some by an elastic string and others by other forms of mechanical means. Some of them are captive golf balls. One is for a captive baseball, and one is for a child's toy, comprising a flat paddle with a rubber ball attached thereto.

This prior patent art shows only the following old elements common to Smith, namely: A mat of felt or rubber, a golf or rubber ball held captive by an elastic string, and a golf ball in combination with a tee. That art, taken singly or in combination, does not anticipate. Nor does it show all the elements of the Smith device separately, much less in combination. The new features of the Smith device are: (1) The annular projecting flange forming a base or tee; (2) the hollow elastic rubber cord tied at both ends so as to make a pneumatic tube; (3) the felt disc within the hollow ball as a fastening means between the ball and the elastic tube; (4) means for holding the hollow ball in a teed position, permitting it to leave that position and returning it automati-

cally after each stroke; (5) the notch or fork in co-operation with the groove, pneumatic tube, and depending buttom, permitting controlled direction of the stroke. In none of the prior art is found a rubber ball with a base similarly constructed, although Crowley approximates it. In none of that art is found a hollow elastic tube with the ends so tied as to make it a pneumatic tube. In none of the art is shown means permitting the ball to leave the tee and return automatically to a teed position. These features and elements are new in Smith. The combination of them with the old elements is novel and original. The principle of operation, as well as the function and result, seems likewise to be new.

Does this combination embody invention? The question of invention is always one of fact. It cannot be determined with accuracy according to any set rules or definitions. As was said by Judge Hough (Kurtz v. Belle Hat Lining Co. [C. C. A.] 280 Fed. 280):

"Evidence as to invention does not often give rise to conflicts of fact in the ordinary sense of that phrase; it does, however, give rise to acute differences of opinion as to the inferences to be drawn from facts in themselves uncontradicted."

It remains true that even after applying such canons of decision as the experience of judges has developed, the question of whether invention is present in a device may still be answered differently by persons of equal intelligence. The present case is of this nature; but, in my opinion, Smith's device embodies invention. It may not be an invention of great merit or of a high order. It undoubtedly has a limited field of use and is of doubtful utility. The inventive conception is of that class known as the "happy thought"; that is to say, the intuitive mental act of discerning deficiencies in an existing device, or the needs of a new situation, and devising simple means to meet a new desire of the purchasing public. Considering, however, the presumption of validity resulting from the issue of a patent, the sales and use which have followed its introduction to the public, the apparent failure of all other devices of the prior art to go into general use, a court is not justified in striking down this patent as void for want of invention. On principle, the invention is within that class which was sustained in the following cases. Faultless Rubber Co. v. Star Rubber Co. (C. C. A. 6) 202 Fed. 927, 121 C. C. A. 285; Kurtz v. Belle Hat Lining Co. (C. C. A. 2) 280 Fed. 277; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527.

[3] Defendants' construction is, in my opinion, an infringement. It was devised by T. H. Dillon. Before doing so, he had access to Smith's devices, and designed his with a view to avoiding infringement. Its principles of operation and the results accomplished are precisely the same as Smith. It comprises, admittedly, all the features and elements of Smith, with certain minor exceptions, which are, in my opinion, not sufficient to avoid infringement. It substitutes for the rectangular rubber mat a rectangular cocoa mat, dyed green to look like the turf. It adds a metal part to carry the mat, in which are formed on the under side of the mat the groove or channel leading from a slot to the recess. In lieu of the fork is substituted a slot, and in lieu of the knob or button in the recess, formed integrally with the mat, is sub-

stituted a loose felt button, held in position by struck-down lugs. The substitution of a cocoa mat for a rubber mat is merely a change from one material to another, and neither embodies invention nor avoids infringement. Moreover, Smith did not limit himself to rubber, but selected it as a preferred material. The same observations apply with equal force to the addition of a metal element to make a completed mat with groove, recess, and slot. The substitution of a slot for a notch may be an improvement, but it accomplishes the same result and operates on the same principle; that is, serves as a tee and permits direction control of the captive ball. Certainly, substituting a loose button for an integrally formed button to which the elastic hollow tube is tied in the same way is merely a colorable change and not an improvement. Infringement is not avoided even if Dillon has obtained a patent, or these changes are patentable improvements. See Herman v. Youngstown Car & Mfg. Co. (6 C. C. A.) 191 Fed. 579, 112 C. C. A. 185; Crown Die & Tool Co. v. Nye Tool & Machine Works, (decided February 19, 1923) 43 Sup. Ct. 254, 261 U. S. 24, 67 L. Ed. ——.

Claims 3, 4, 6, 9, and 15 of patent No. 1,439,338, and claims 1, 2, 3, 4, 8, 9, 12, and 13 of patent No. 1,439,339 adequately and specifically claim Smith's real invention and will be held valid and infringed. Claims 1, 2, 5, 12, 13, and 14 of patent No. 1,439,338, and claims 5, 6, 7, 10, and 11 of patent No. 1,439,339 are too broad to be sustained. Smith, in these claims, attempted to cover, not his complete operative combination, but merely elements old in the art, which, even if new in this combination, are so obvious as not to amount to invention. They will be held invalid.

On this hearing it appeared that defendants had made only 25 of their devices and had sold only 11. The retail sales price was $10. In view of this limited infringement, plaintiff does not now insist upon an accounting of profits and damages.

Defendants' answer contains what purports to be a counterclaim for damages for unfair competition. The evidence did not, in my opinion, make out this cause of action, and defendants' counsel at the hearing, in response to an inquiry, announced that the counterclaim would not be insisted upon.

A decree awarding an injunction will be entered in conformity herewith. No accounting will be ordered. Defendants' counterclaim will be dismissed. In view of the fact that plaintiff put in issue several claims which have been held invalid, without making disclaimer, no judgment for costs will be entered.