558

TOM HUSTON MFG. CO. et al. v. CLYDE IRON WORKS SALES CO.

CLYDE IRON WORKS SALES CO. v. TOM HUSTON MFG. CO. et al.

Circuit Court of Appeals, Sixth Circuit.
May 10, 1929.

Nos. 5116, 5117.

Lester B. Mann and Gillson, Mann & Cox, all of Chicago, Ill. (Louis K. Gillson, of Chicago, Ill., and Wm. R. Wood and Edmund P. Wood, both of Cincinnati, Ohio, on the brief), for Tom Huston Mfg. Co.

John F. Oberlin, of Cleveland, Ohio (Fay, Oberlin & Fay, of Cleveland, Ohio, and Allen & Allen, of Cincinnati, Ohio, on the brief), for Clyde Iron Works.

Before MOORMAN, HICKS, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. ▮ Suit for infringement of patent No. 1,529,912, issued to Peacock, March 17, 1925, upon an application filed May 26, 1920. The patent relates to a device for pulling stumps and logs. Claims 1, 2, 4, 5, and 7 were relied upon. The District Court held claims 1 and 2 valid and infringed by defendant's bathtub type of machine but not infringed by its bull dog type, claims 4 and 5 invalid, and did not find it necessary to pass upon claim 7. Claims 1 and 2 relate to a mechanism for converting a tractor into a stump puller, skidder or the like. Claims 4 and 7 relate to a combination with a tractor of a pulling attachment, and claim 5 is for a pulling attachment for tractors which is the equivalent of the mechanism called for in claims 1 and 2.

Claims 1, 2, and 5 as permissibly narrowed by the specifications[1] call for a mechanism consisting of a rigid base or half underbody in the form of a skid having a drum mounted on a shaft paralleling the rear tractor axle housing with gears upon this shaft and forwardly extending bars rigidly connected with the base. This mechanism with the utilized parts of a tractor is made into a skidder or pulling unit by removing the rear tractor wheels, lowering and securely fastening the rear axle housing to split boxes on the pedestal, mounting gears on the projecting ends of the driving shafts from whence the tractor wheels have been removed, meshing them with gears on the drum shaft of the attachment, and firmly clamping the bars which extend forwardly from the pedestal to the front axles. The chassis of the tractor, with the front wheels and axle, thus becames a part of the base from which the motor operates, and the power of the motor may be transmitted through the driving shafts of the tractor to the drum shaft of the attachment and utilized for pulling operations.

Peacock was not the first to conceive the idea of converting a motor vehicle into a pulling machine. Long before he entered the field there were pulling devices operated by mechanism connected with the rear wheels or axles of automobiles, as, for example, Thomas, No. 1,205,288, Anderson, No. 1,211,033, and Van Dolsen, No. 1,225,081; and there were also devices which could be converted into either automobile vehicles or pulling machines. Cook and Van Tuyl, No. 1,180,475, and De Marco, No. 1,256,527. We find no complete equivalency, though, in the means used in these devices to those employed by Peacock. His device may as readily be reconverted into a tractor as it was originally made into a skidder. It also has greater mobility over the kind of ground on which such machines are ordinarily operated than the earlier skidders. We cannot, however, attribute invention to this latter utility, but there was invention, we think, in the means which Peacock devised for converting a tractor and pulling machine from one to the other.

---

[1] Lamb Knit Goods Co. v. Lamb Gloves & Mitten Co. (6 C. C. A.) 120 F. 267; Faultless Rubber Co. v. Star Rubber Co. (6 C. C. A.) 202 F. 927; Crown Cork & Seal Co. v. Sterling Cork & Seal Co. (6 C. C. A.) 217 F. 381; Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co., 272 F. 386 (6 C. C. A.); McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800.

The defendant's bathtub type of skidder in our opinion infringes. It has the skid or casting which supports the rear axle housing and which is held in rigid connection with the front of the tractor. It also has a drum shaft carrying a drum with gears meshing with a pinion on an intermediate shaft equipped with pinions meshing with and driven by gears mounted on the rear driving axle shaft of the tractor from whence the wheels have been removed. The device, like Peacock's, is supported in front by the front wheels. The gearing by which the drum shaft is operated, while differing to some extent from Peacock's, is nothing more than a mechanical equivalent.

The bull dog type appears in a different aspect. The base of the machine is a long skid of steel upon which the body of the tractor is placed after the removal of the wheels. The rear axle housing of the tractor is clamped upon the skid much in the same way as in the bathtub type. The front axle is removed entirely and effective means used for securing the front part of the motor to the skid. The means by which the power of the motor is utilized, while not differing materially from those which the plaintiff uses, were old before the application for the patent in suit was filed. It was also old to use motors and engines in combination with wooden or steel bases in constructing pulling machines. Rigidity of the unit is obtained by entirely different means from those which the plaintiff employs for that purpose. To reconvert this device into a tractor would be difficult. Indeed, it has none of the attributes of a tractor except the engine and engine housing. It is not, we think, embraced within the means called for by the three claims in question.

■ The combination claims 4 and 7 relied upon are broad enough to be read upon every pulling device that was operated by the equivalent of tractor power, prior to Peacock. Their validity is urged upon us upon the ground that there is invention in combining the motor power of a tractor with a log and stump pulling mechanism. We do not think so. For many years before Peacock there were pulling devices used in logging and timber enterprises which were operated by steam engines, gasoline engines, and other motive power in common use. All of these different kinds of power, including tractor motors, were well known, and most, if not all, of them had been utilized by the manufacturers of skidders and other such devices. The patentee found it expedient to use a Fordson tractor motor for his power. It was equally open to defendant to select the power that it desired to use. Each had the right to use any engine that was commercially sold. To hold otherwise, as said by the court below, would be to exclude defendant from exercising the power of selection from the field of public domain.

We have not found it necessary to pass upon the errors assigned on the admission and rejection of evidence, since there is no point of view from which that evidence would affect the conclusions that we have reached. We accordingly hold that claims 1, 2, and 5 are valid and infringed by defendant's bathtub type machine, but not infringed by its bull dog type, and that claims 4 and 7 are invalid.

The decree below will be modified accordingly and, as modified, will be affirmed.