## BLACK · & DECKER MFG. CO. et al. v. BALTIMORE TRUCK TIRE SERV- ICE CORPORATION et al.

District Court, D. Maryland.    June 8, 1928.

No. 1267.

1. Patents ⊚⇒112(3)—Presumption of patent- ability arising from grant of patent is strengthened by fact that apparatus met needs of new situation and secured approbation of public.

Presumption of patentability arising from grant of patent by the Patent Office is strength- ened and reinforced by the fact that apparatus met the needs of a new situation and secured general approbation of public.

2. Patents ⊚⇒74—Patentee is charged with knowledge of disclosures of prior patents.

Patentee is charged with knowledge of dis- closures as shown by prior patents involving similar invention.

3. Patents ⊚⇒328—1,458,920, claim 5, for plat- form scale for weighing vehicles on road, held invalid for want of invention.

Troll patent, No. 1,458,920, claim 5, for a platform scale for weighing vehicles on the road, held invalid for want of invention.

4. Patents ⊚⇒328—1,458,920, claims 2 and 15, for platform scale for weighing vehicles on road, held not infringed.

Troll patent, No. 1,458,920, claims 2 and 15, for a platform scale for weighing vehicles while on the road, held not infringed.

5. Patents ⊚⇒168(2)—Patentee, acquiescing in rejection of broad claim, cannot there- after insist that limitations of other narrow- er claims should be ignored.

A patentee, who has acquiesced in rejection of a broad claim by canceling it, cannot there- after insist that the limitations of other nar- rower claims, which distinguish them from the canceled subject-matter, should be ignored.

In Equity.   Action by the Black & Decker Manufacturing Company and another against the Baltimore Truck Tire Service Corpora- tion and William A. Stutt; the bill being dis- missed as to defendant last named by con- sent during the trial.   Bill dismissed.

Edwin F. Samuels, of Baltimore, Md., for plaintiffs.

Cooper, Kerr & Dunham and John C. Kerr, all of New York City, and Venable, Baetjer · & Howard, of Baltimore, Md. (Jo- seph France, of Baltimore, Md., of counsel), for defendants.

SOPER, District Judge.   The plaintiffs have brought an action in equity to enjoin the infringement of United States letters pat- ent No. 1,458,920 to Frederick J. Troll.   The Loadometer Company is the assignee of the patent; the Black & Decker Manufactur- ing Company, the exclusive licensee thereun- der.   .The Baltimore Truck Tire Service Cor- poration and ·William A. Stutt, its president, are charged with infringement of certain claims of the patent by reason of the use of a road scale manufactured by E. & T. Fair- banks Company, at whose instance the suit is defended.   The bill was dismissed as to Stutt, by consent during the trial.

The machine covered by the patent is a platform scale for weighing vehicles while on the road.   It is called in the patent a road- bearing meter, and is described by the plain- tiffs as a manually portable instrument of the drive-on type for testing the wheel-bearing pressure of motor vehicles, particularly heavy trucks, and for determining wheel loads and total loads.   It is used especially by state officials, charged with the duty of detecting violations of state laws prohibiting the use of the roads by certain specified motor ve- hicles in excess of a certain weight.   It is also used by manufacturers of automobile tires, in order to determine the proper sizes to be used on particular motor vehicles.

It was developed in Maryland primarily for the first-mentioned purpose.   The traffic by heavy trucks was particularly heavy dur- ing the Great War, and there was much in- jury and destruction of roads, and consider- able difficulty in the enforcement of the law against excess weight.   A number of station- ary platform scales of the well-known type were installed along the roads to test sus- pected vehicles.   Such a device was very ex- pensive.   It weighed 1,000 or more pounds, and was installed in a pit 3½ feet deep and 6 by 12 to 14 feet in horizontal dimensions. It was sufficiently accurate, but, since it was necessarily stationary, it was not effective. It was not practicable to require truck driv- ers to go long distances out of their way; and, moreover, drivers, knowing the locations, did not have much difficulty in avoiding them. To meet the problem, a portable scale or weighing jack was adopted.   It was similar in construction to the ordinary motor ve- hicle jack, carried in every motor car, with the addition of a weighing unit.   The use of the jack obviated much of the difficulty ex- perienced with the stationary platform scale. It was easily portable and could be conveni- ently carried by enforcement officials.   Many

prosecutions were successfully carried on, and violations of the law were checked.

But the weighing jack, too, had certain defects. In order to get accurate results, it was necessary to place the jack under the axle at the wheel; but this was not always possible, owing to the construction of the trucks. Nor was it possible to keep the axle level. The result was that weights were not always accurately ascertained. Moreover, considerable manual labor was involved. The work was slow and tended to block traffic on the road. The jacks themselves were short-lived, due to the stripping of threads and bending of the screws.

The final development, which resulted in the device covered by the patent in suit, was a manually portable platform scale, about 45 pounds in weight. This is not only convenient to handle, but accurate in operation. It is placed on the road in the path of the wheel of the truck, which is driven upon it. The truck is stopped but a short time, and the weight is registered. The truck is then driven off in the same direction and the operation repeated upon the rear wheels. The process may be shortened and the weights more accurately ascertained, if the scales are used in pairs, one for each side of the truck. Each scale may have a capacity of 15,000 to 20,000 pounds.

The commercial success of the device has been pronounced. It is now in use by the state authorities of 36 states for the detection of violations of the overloading laws, and a considerable number have been purchased for the same purpose for use in foreign countries. It has also been sold to various tire companies for use in determining various tire sizes, particularly for use on trucks. It has completely supplanted the old apparatus.

The practical success of the plaintiffs' device is further shown by the conduct of the Fairbanks Company, the manufacturer of the machine used by the defendant. The Black & Decker Manufacturing Company was in negotiation with the Firestone Tire & Rubber Company for the purchase of certain machines manufactured under the patent. The question of price arose, and the parties were unable to agree. The Firestone Company then submitted the plaintiffs' machine to the Fairbanks Company, which thereupon designed a machine of its own, in which the main points of the patented device are reproduced.

[1] It must therefore be conceded that the plaintiffs are entitled in this case, when the validity of the patent is considered, not only to the presumption of patentability arising from the grant of the patent by the Patent Office, but this presumption is strengthened and reinforced by the fact that the plaintiffs' apparatus met the needs of a new situation and secured the general approbation of the public. Pangborn Corporation v. W. W. Sly Mfg. Co. (C. C. A.) 284 F. 217; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 441, 31 S. Ct. 444 (55 L. Ed. 527); Vaco Grip Co. v. Sandy MacGregor Co. (D. C.) 292 F. 249.

The representative claims of the patent, upon which plaintiffs rely, are claims 2, 5, and 15. They are as follows:

"2. A tire-bearing pressure meter, comprising a manually portable apparatus, including a base, a platform member, and a guide therefor, a resilient member of sufficient resistance to carry a wheel of a loaded truck supporting the platform member, said apparatus being of extremely short vertical dimensions and having an inclined portion leading to the platform, so that the wheel of a truck can be run onto it without difficulty when it is placed in the roadway, and means for indicating the pressure on said resilient member."

"5. A bearing pressure meter for roads, comprising a manually portable apparatus, of short vertical dimension, having a yielding support for a vehicle wheel, the same being of width only sufficient to receive and support a single wheel, and means for indicating the pressure on the support."

"15. A method of determining wheel pressure of road vehicles while the vehicles are on the road, which consists in placing a plurality of manually portable independent weighing units on the roadway in the path of the wheels, spacing them apart to correspond to the tread, running the wheels onto the weighing units, and reading the respective weighing units."

The apparatus, as disclosed by drawings in the specifications, shows a frame or a base of small vertical dimension, with runways at the ends. The base has a central chamber or opening, which is circular in the horizontal dimension, with straight side walls substantially vertical. It is closed at the top by a yielding platform of slightly less area, so that it may work freely up and down in the cylindrical chamber. This platform rests upon a resilient member, which is shown in the form of a coil of heavy rubber tubing, that tends to maintain the platform near the level of the top of the frame. Since the instrument is of short vertical dimension, the wheel of the truck can be easily run onto it

from the runways at the end. The platform is so narrow that it will receive only a single wheel. The indicating means by which the weight on each wheel may be read is a fluid pressure gauge, which is operated by the pressure on a fluid within the rubber tubing. The weight of the wheel is communicated through the yielding platform to the resilient member, the form of which is changed thereby, exerting, in turn, pressure upon the fluid which is measured in the pressure gauge.

The commercial machine is of somewhat different construction, but embraces all of the elements of the patent. The rubber hose is replaced by a metallic diaphragm, which, like the hose, is resilient or elastic, and capable by change of form of transmitting the pressure from the yielding platform to the liquid in the pressure gauge.

The defendant denies infringement of claims 2 and 15 of the patent, and charges that claims 5 and 15 are invalid, in view of the prior art. Laying aside for the moment the precise language of the claims, it will be well first to examine certain general considerations affecting the validity of the patent. It is not contended that the reduction of the plaintiffs' thought to practice in the construction of the machine required the exercise of invention. The representative of the Fairbanks Company testified without denial that its machine, charged by the plaintiffs to be an infringement of the patent, involved merely the application of accepted methods of scale construction. On the other hand, the plaintiffs assert that it was a new thing to make a yielding platform scale of the drive-on type, at the same time portable by hand, and capable of weighing very heavy vehicles upon the road.

Speaking broadly, there are three elements in this conception: (1) A platform scale of the drive-on type; (2) manual portability; (3) great capacity for registering weights. Whether or not a combination of these three elements embodies invention depends, of course, upon the prior art. Bearing in mind that we are concerned with the novelty of the idea, rather than the novelty of its execution, it is found, when the prior art is examined, that it was not new to bring scales to an object to be weighed, rather than the object to the scales. The idea of portability of scales was not novel. Nor was the kindred conception that the weight of heavy objects may be ascertained upon scales relatively light. The evidence shows that the jack type of road scale was well known when Troll filed his application for a patent. The jack, combined with a weighing unit, weighed less

than 50 pounds, and was capable of measuring the weight of heavy trucks upon the road. Two important elements of the Troll idea in combination were therefore old, and invention in his patent must be found, if at all, in the application of them to platform scales of the drive-on type.

If it were true that no one prior to Troll had disclosed the practicability of a drive-on platform scale for weighing loaded vehicles upon the road, it might well be said that it involved invention to conceive such a device so light as to be portable, and so strong as to register the weight of several tons. In other words, it might be invention to unite with the two old elements an element not before conceived. But platform drive-on scales were not new to the art, as the following references will show. They also illustrate the combination of portability and capacity.

The Witherell patent of 1884 discloses a portable scale for weighing vehicles. The declared purpose of the invention was to provide a portable scale, whereby loaded vehicles or bulky objects might be accurately weighed on the road, or in the field, wherever they might happen to be, without the trouble and cost of driving the vehicle or lifting the object to be weighed upon the platform or other scales then in use. This was accomplished by weighing one wheel at a time, and taking together the weights so found. When the weight of one wheel was noted, the machine could be withdrawn and taken to the other side of the vehicle, so that it in turn might be weighed in the same manner. The device was not so constructed as to receive the large tire of the modern motor vehicle, but was designed for the narrow steel-shod tire of an earlier day. Nor was it equipped with a platform, the wheel being driven upon the bifurcated arms of the weighing lever or beam, which were pivoted upon the ends of a yoke suspended upon the top of a jackscrew, whereby the beam, with its load, could be raised from the ground. Generally speaking, therefore, this weighing machine was of the jack type. Nevertheless it embraced the broad idea of the registration of heavy weights by a portable apparatus.

The German patent to Jamiolkowski of 1899 shows two small platform scales having their weighing mechanism connected together to operate simultaneously, to give a single reading of the total load on the two scales. Each of them is 5½ or 6 feet long, one being intended to receive the front wheels while the other receives the rear wheels of a vehicle. They are pictured in the drawing accompanying the patent as weighing a load of hay.

If each of the platform scales shown by this patent were to be divided into two parts, each equipped with a weighing unit, there would result four small platform scales equipped with\ runways, which would differ from the plaintiffs' device only in the fact that the registration device is dissimilar. The plaintiffs suggest that, as shown by the patent, the apparatus was not easily portable, and this is true as compared with the portability of the plaintiffs' machine.

The German patent to Schubert of 1916 shows clearly a scale for weighing single wheel loads of vehicles upon the road. It is of short vertical dimension, and includes sloping runways to lead the wheel onto the scale platform. It is quite small and evidently manually portable. It is in two parts: (1) A separate runway leading to a rail member or platform narrower than the wheel of the vehicle; and (2) a scale lever which rests on the flanged foot of the runway beneath the projecting wheel, and serves to lift it in the weighing operation.

[2] Charging the patentee with knowledge of these disclosures, as we must, it does not appear that it required the exercise of the faculty of invention to substitute the portable platform scale for the portable weighing jack. The advantages of the jack had been demonstrated. An examination of the cited patents relating to road scales would have at once suggested how its disadvantages might be overcome. It is true that none of the prior devices is similar in all respects to the Troll machine. None would suffice to support the weight of a five ton loaded automobile truck. They were built to register lighter weights; but it is obvious that they indicated the means by which the inconvenience of the jack could be overcome. It is necessary to revert again to the concession that, once the idea had been conceived, it required only the skill of a person familiar with the art to reduce it to practice. A mistake in this respect on the part of the patentee during the prosecution of his application in the Patent Office no doubt contributed to secure for him the issue of the patent. The Examiner had rejected certain claims on the Jamiolkowski patent and the British patent to Zeidler of 1901, from which action an appeal was taken.

In connection therewith, Troll made an affidavit that he was an engineer and well acquainted with the mechanism of scale construction, that the capacity of his road scale must be about 20,000 pounds, and that the Jamiolkowski scale, as pictured in the patent of that name, was weighing a load of 1,500 to 2,000 pounds, and that the scale itself weighed some 300 pounds in each of its two members. He further deposed that a lever scale, such as was employed by Jamiolkowski, could not be made with a capacity of 20,000 pounds, unless the platform were made 2 feet high and the apparatus weighed 1,000 pounds. How inaccurate this statement is appears when it is borne in mind that the Fairbanks scale in evidence in this suit is a lever scale of sufficient capacity to weigh a loaded automobile truck upon the road, but is only some 3 inches in height and weighs about 75 pounds. It follows that the presumption of patentability from the issue of the patent is greatly weakened.

[3] It does not help the plaintiffs' case to refer to the terms of the claims of the patent. Claim 5 is quite broad. It is not confined to a platform scale. On the contrary, it embraces any manually portable apparatus of short vertical dimension, having a yielding support for vehicle wheels. It therefore covers, not merely a platform scale, but one of the jack type in the use of which the wheel is lifted in the course of being weighed. It is not denied that the weighing jack comprises a yielding support for the vehicle wheel. The terms of the claim are so broad that it would appear that it reads, element for element, upon the Witherell patent, which was not cited in the Patent Office. For this reason, in addition to those already given, it is held that claim 5 is invalid for want of invention.

[4] Claim 2 is narrower, and, as phrased, its validity is not assailed by the defendant. Infringement, however, is denied. The claim specifies a resilient member of sufficient resistance to carry a wheel of a loaded truck supporting the platform member. The defendant denies that its scale contains such a resilient member. It is illustrated in the plaintiffs' apparatus by the rubber hose shown in the specifications of the patent, and by the metallic diaphragm which has been substituted for the rubber hose in the plaintiffs' commercial scale. The Fairbanks scale, on the other hand, contains no member which is inherently resilient, in the sense of the hose or the metallic diaphragm, but depends upon an arrangement of levers by which the pressure upon the platform is communicated to the registration device, and the platform is returned to its original position when the weight is removed. The plaintiffs claim that the word "resilient" should be broadly construed, to cover anything that yields and tends to recover, including the mechanism of the Fairbanks scale. But it is evident, in

the light of the specifications, that the patentee meant, by the words "resilient member," a member which was inherently resilient. It is an unwarranted stretch of the specific language used to extend it as the plaintiffs contend. It therefore appears that the claim properly interpreted is not infringed by the Fairbanks scale.

But the plaintiffs go further and invoke the doctrine of equivalents, contending that, if the Fairbanks scale does not contain a member literally resilient, it nevertheless contains the equivalent thereof, arguing that there is nothing patentable in the mechanical construction of the weighing unit in either scale, but that one weighing unit is substantially the equivalent of another. No attempt has been made by the defendant to furnish citations from the prior art to show a lack of invention arising from the use of an inherently resilient member in the Troll scale. Whether or not such a construction involves invention it is not necessary to decide in this case, because there is no infringement of the claim as thus construed. On the other hand, if the claim is to be given so broad a construction as to be entitled to a range of equivalents as broad as that for which the plaintiffs contend, then claim 2 becomes substantially as broad and inclusive as claim 5, and open to the same charge of invalidity. So far as claim 2 is concerned, it is sufficient for the purpose of this case to rest the decision upon the ground that the defendant does not infringe.

[5] Claim 15 is a method claim. It consists in placing a plurality of scales on the roadway in the path of the wheels and running the wheels upon them. It is difficult to perceive invention in the use of two scales at the same time, particularly as it was an old practice in the weighing of locomotives and railroad cars on the tracks, as appears from the Groome patent of 1911 and the Ehrhardt patent of 1866. But it is not necessary to pass on the validity of the claim, since the defendant company does not conform to the method in its use of the Fairbanks scale. It uses a weighing unit under one wheel and a dummy of the same height and shape under the other. This practice, the plaintiffs contend, is an effective infringement, because the essential feature of the method is that the axle must be level, or otherwise there is an error in the ascertainment of the weight proportionate to the deflection. But clearly the use of a single weighing unit on each wheel successively is not described by language which implies the use of a plurality of weighing units simultaneously. The history of the patent application requires that the limitations of the claim to a plurality of scales be strictly construed. During the prosecution of the application for the patent, Troll amended the application by adding a new claim, No. 17. It described the placing of a weighing unit on the road, running a wheel onto it, and calculating the weight. In explanation of the claim, Troll's attorney said that it was similar to claim 15, except that it was limited to the use of two or more weighing units. The Examiner rejected the claim on the Jamiolkowski patent, whereupon the applicant canceled the claim. A patentee, who has acquiesced in the rejection of a broad claim by canceling it, cannot thereafter insist that the limitations of other narrower claims, which distinguish them from the canceled subject-matter, should be ignored. Roemer v. Peddie, 132 U. S. 313, 317, 10 S. Ct. 98 (33 L. Ed. 382); Brill v. St. Louis Car Co. (C. C. A.) 90 F. 666, 668.

The bill of complaint will be dismissed.